**SHOOK, HARDY & BACON, L.L.P.**
Tammy B. Webb (SBN 227593)
tbwebb@shb.com
Matthew G. Ball (SBN 208881)
mgball@shb.com
Aubrey Kramer (SBN 359426)
akramer@shb.com
555 Mission St. Suite 2300
San Francisco, CA 94105
Tel: 415-544-1900 | Fax: 415-391-0281

**Attorneys for Defendant**
**Macys.com, LLC**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THU NGUYEN, individually and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MACY'S.COM, LLC,<br><br>Defendant. | Case No. 5:25-cv-07096-PCP<br><br>**DEFENDANT MACYS.COM, LLC'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: April 23, 2026<br>Time: 10:00 a.m.<br>Dept.: Courtroom Number 8<br>Judge: Honorable P. Casey Pitts |

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO THE COURT AND ALL PARTIES OF RECORD:

PLEASE TAKE NOTICE that on April 23, 2026, at 10:00 a.m., or as soon thereafter as may be heard, before the Honorable P. Casey Pitts, in Courtroom 8, 4th Floor, Defendant Macys.com, LLC ("Defendant" or "Macy's") will and hereby does move to dismiss the First Amended Class Action Complaint filed by Plaintiff Thu Nguyen ("Plaintiff") in this action. Defendant's motion to dismiss is brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, and all other pleadings and papers on file herein.

Dated: January 29, 2026 Respectfully Submitted,

SHOOK, HARDY & BACON, L.L.P.

By: <u>/s/*Tammy B. Webb*</u>
Tammy B. Webb
Matthew G. Ball
Aubrey Kramer

Attorneys for Defendant
Macys.com, LLC

## TABLE OF CONTENTS


Page

INTRODUCTION ..... 1

ISSUES TO BE DECIDED ..... 2

BACKGROUND ..... 2

ARGUMENT ..... 4

I. PLAINTIFF LACKS ARTICLE III STANDING. ..... 4

A. Standard For Motions To Dismiss Under Rule 12(b)(1) Subject Matter Jurisdiction. ..... 4

B. Plaintiff Fails To Allege A Concrete Harm. ..... 5

C. Plaintiff Fails To Plausibly Allege A Legally Protected Privacy Interest. ..... 6

D. Plaintiff Fails To Allege Collection Of Any Private Information. ..... 9

II. PLAINTIFF FAILS TO STATE A CLAIM UNDER CIPA § 638.51 ..... 10

A. Standard For Motion To Dismiss Under 12(b)(6) Failure To State A Claim. ..... 10

B. Plaintiff Fails To Adequately A § 638.51 Violation. ..... 11

C. Plaintiff Fails To Allege Facts Sufficient To Show That He Had A Cognizable Privacy Interest In the Allegedly Intercepted Information. ..... 12

D. Plaintiff's Claim Falls Outside The Zone Of Interest Protected By Statute And Therefore Fails. ..... 13

III. INTERPRETATION OF CIPA SECTION 638.51 IS SUBJECT TO THE RULE OF LENITY. ..... 16

CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) .......... 11

*Ashcroft v. Iqbal*, 556 U.S. at 678 (2009) .......... 10, 11

*Bradshaw v. Lowe's Companies, Inc.*,
No. 25cv0742 DMS (MMP), 2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) .......... 6

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-CV-01456-SB-S, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 9

*Capitol Recs. Inc. v. Thomas-Rasset*,
No. CIV 06-1497-MJD/RLE, 2009 WL 1664468 (D. Minn. June 11, 2009) .......... 15

*Casillas v. Transition Optical Inc.*,
No. 23STCV30742, Minute Order (Cal. Super. Apr. 23, 2024) .......... 15

*Casillas v. Transitions Optical, Inc.*,
No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Sept. 9, 2024) .......... 2, 14

*Cetacean Cmty. v. Bush*,
386 F.3d 1169 (9th Cir. 2004) .......... 4

*Daghaly v. Bloomingdales.com, LLC*,
697 F. Supp. 3d 996 (S.D. Cal. 2023) aff'd on other grounds, No. 23-4122, 2024 WL 5134350 (9th Cir. Dec. 17, 2024) .......... 9

*Doe v. Eating Recovery Ctr. LLC*,
No. 23-cv-05561-VC, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) (Chhabria, J.) .......... 16

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) (*per curiam*) .......... 11

*Gabrielli v. Insider, Inc.*,
No. 24-CV-01566 (ER), 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) .......... 6, 13

*Garon v. Keleops USA, Inc.*,
No. 25-CV-02124-DMR, 2025 WL 2522374 (N.D. Cal. Sept. 2, 2025) (Ryu, J.) .......... 16, 17

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 15, 16

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) (Donato, J.)....................6, 7, 16

*Heiting v. FKA Distributing Co.*,
No. 2:24-CV-07314-HDV-AGR, 2025 WL 736594 (C.D. Cal., Feb. 3, 2025)....................9, 10

*Hughes v. Vivint, Inc.*,
No. CV 24-3081-GW-KSX, 2024 WL 5179916 (C.D. Cal. July 12, 2024), adopted, No. CV-24-3081-GW-KSX, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024)....................8, 9

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022)....................7, 8

*In re Zappos.com, Inc.*,
888 F.3d 1020 (9th Cir. 2018)....................10

*Ji v. Naver Corp.*,
No. 21-cv-05143-HSG, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022)....................8

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d. 1174 (N.D. Cal. 2025) (Kim, J.)....................6, 7

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014)....................4

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)....................13, 14

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Mar. 13, 2024)....................2, 12, 14

*Loder v. City of Glendale*,
14 Cal. 4th 846 (Cal. 1997)....................5

*Malibu Media, LLC v. Pontello*,
No. 13-12197, 2013 WL 12180709 (E.D. Mich. Nov. 19, 2013)....................15

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023)....................6, 7

*Mitchener v. CuriosityStream, Inc.*,
No. 25-CV-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025)....................8, 13

*Nguyen v. Yahoo, Inc.*
No. 25CV474001 (Santa Clara Cnty. Super. Ct. Aug. 26, 2025)....................4

*Oganyan v. Biolife Plasma Servs. L.P.*,
No. 1:25-cv-00099-KES-SKO, 2025 WL 2979619 (E.D. Cal. Oct. 22, 2025)....................6, 7

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
No. 16-CV-01393-JST, 2017 WL 2672113 (N.D. Cal. Jan. 19, 2017) .................................. 10

*Parducci v. Overland Sols., Inc.*,
No. 18-cv-07162-WHO, 2020 WL 4193368 (N.D. Cal. July 21, 2020) ................................ 15

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........................................................................................ 5

*Posadas v. Goodyear Tire & Rubber Co.*,
No. 23-cv-0402, 2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) ............................................ 9

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ............................................................................... 6

*Rodriguez v. Brushfire Recs.*,
No. 2:25-CV-09797-CAS-PDX, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ...................... 7

*Rodriguez v. Culligan Int'l Co.*,
No. 25-cv-0025-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ............................... 6

*Rodriguez v. Fountain9, Inc.*,
No. 24STCV04504, 2024 WL 3886811 (Cal. Super. July 9, 2024) ............................. 6, 12, 15

*Rodriguez v. Plivo Inc.*,
No. 24STCV08972, 2024 WL 5184413 (Cal. Super. Oct. 2, 2024) .......................... 11, 12, 13

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Jan. 27, 2025) ................................. 16, 17

*Scott v. Breeland*,
792 F.2d 925 (9th Cir. 1986) ........................................................................................... 4

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) (Lin, J.) ................................................................ 13

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................................................................................ 5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ............................................................................................ 2, 4, 5, 10

*United States v. Auernheimer*,
748 F.3d 525 (3d Cir. 2014) ........................................................................................... 14

*United States v. Cabaccang*,
332 F.3d 622 (9th Cir. 2003) .......................................................................................... 17

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ................................................................................. 3, 7, 14

*United States v. New York Tel. Co.*,
434 U.S. 159 (1977) .......... 11

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) .......... 16

*Xu v. Reuters News & Media Inc.*,
No. 24 CIV. 2466 (PAE), 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) .......... 6

**Statutes**

Cal. Penal Code § 630 .......... 14

Cal. Penal Code § 638.50(b) .......... 11

Cal. Penal Code § 638.51(c) .......... 16

Federal Pen Register Act .......... 15, 17

Privacy Act (“CIPA”) § 638.51 .......... *passim*

**Rules**

California Rule of Court 8.1115 .......... 15

Fed. R. Civ. P. 12(b)(1) .......... 4

Fed. R. Civ. P. 12(b)(6) .......... 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Thu Nguyen's ("Plaintiff") First Amended Complaint ("FAC") suffers from the same fatal defects present in Plaintiff's prior pleadings and fails to cure the deficiencies identified in Macys.com, LLC's ("Macy's") earlier Motion to Dismiss (Dkt. 24). At bottom, Plaintiff still does not allege a cognizable injury to establish standing, as he has not adequately alleged *any* loss as a result of Macy's use of ubiquitous advertising technology. For the reasons set forth below, Plaintiff's FAC should be dismissed in its entirety.

Plaintiff has filed multiple lawsuits against multiple companies alleging in all of them that ubiquitous website advertising technologies constitute "pen registers" as defined by statute and that their deployment on websites unleashes a host of privacy violations. This proposition attempts to recast the use of commonplace tools—used by countless businesses, healthcare entities, and government agencies, including that of Plaintiff's Counsel—to analyze website traffic and enhance marketing strategies, into a mechanism for triggering expansive class action liability.

Plaintiff claims that he has regularly visited **www.macys.com** ("Website"). He alleges nothing about what he did, if anything, while on the Website. FAC ¶¶ 187–88. He does not claim he made a purchase, provided any personal information, or clicked on any links. Nonetheless, he claims that Macy's used tracking technology created by Taboola and Microsoft on the Website that allegedly collected users' IP addresses and other device identifier information such as "device type, browser type, and unique and persistent identifiers." *Id.* ¶ 2. The allegation that such collection gives rise to a privacy violation is fundamentally flawed as he has no reasonable expectation of privacy in his browser information or IP address.

Based on these allegations, Plaintiff claims that the use of the Microsoft ADNXS and Taboola trackers on the Website violates the California Invasion of Privacy Act ("CIPA") § 638.51, which prohibits the "install[ation] or use [of] a pen register" without consent or a court order. Plaintiff's claim suffers from multiple flaws.

First, Plaintiff lacks Article III standing to bring this claim. The FAC is based entirely on a

pure statutory violation. As the Supreme Court has made clear, an injury in law is not an injury in fact. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Plaintiff has not alleged and cannot establish that any action taken by Macys.com, LLC, caused him concrete harm. Plaintiff's FAC fails to allege any facts about his visit to the Website, instead expounding at length only about what the Taboola and Microsoft technologies **might** do. His reliance on a barebones statutory violation is insufficient to establish Article III standing. This alone warrants dismissal of Plaintiff's FAC.

Second, even assuming Plaintiff could establish Article III standing—which he cannot—his FAC still fails to state a viable cause of action. IP addresses are not the type of information protected under CIPA. The transmission of an IP address and browser data occurs any time a user accesses any website. *See Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *5 (Cal. Super. Sept. 9, 2024). Plaintiff's attempt to stretch CIPA § 638.51 to encompass such routine activity would render "every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator" of CIPA. *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024). Plaintiff's claim under CIPA § 638.51 is therefore untenable.

For these reasons, Plaintiff's FAC should be dismissed.

## ISSUES TO BE DECIDED

1. Has Plaintiff failed to sufficiently plead injury-in-fact to establish Article III standing?
2. Has Plaintiff failed to sufficiently state a claim for the use of a pen register in violation of CIPA § 638.51?

## BACKGROUND

### *Relevant Factual Allegations*

Macys.com, LLC operates the website **www.macys.com** ("Website"). Macys.com is a consumer-facing website that allows visitors to browse Macy's products, find Macy's retail locations, create various registries, and purchase a variety of fashion and home goods. *See* **www.macys.com** (last visited: Jan. 21, 2026); FAC ¶ 1. Plaintiff alleges that when users visit the Website, Macy's causes at least two trackers operated by third parties—ADNXS and Taboola "to be installed on Website visitors' browsers." *Id.* ¶ 2. According to Plaintiff, these technologies collect

users' IP addresses and other device information "such as device type, browser type, and unique and persistent identifiers." *Id.* Plaintiff alleges that each of these technologies used cookies on the user's browser which "instructs the user's browser to send [] the user's IP address and Device Metadata"[1] along with the unique identifier cookie. FAC ¶¶ 65–67. An "IP address is a unique identifier for a device," which Plaintiff concedes is "essential for identifying a device on the internet or within a local network, facilitating smooth communications between devices." *Id.* at ¶¶ 28–29; *see also United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (IP addresses are "provided to and used by Internet service providers for the specific purpose of directing the routing of information" from a "third party's servers"). The FAC does not allege that these technologies collect information that might be considered sensitive personal data. Plaintiff nonetheless contends that Macy's implementation of these technologies on the Website violated CIPA § 638.51.

***Plaintiff's Alleged Interactions with Macys.com***

Remarkably, Plaintiff's 57-page FAC still says next to nothing about his interactions with the Website, other than he regularly visited it. The FAC fails to add any additional details regarding Plaintiff's actual interactions with the Website. His allegations are limited in nature, providing that "Plaintiff Nguyen was in California when he visited the Website" (FAC at ¶ 8) and that he "regularly visited the Website on his desktop browser—as long ago as November 2024 and as recently as March 2025" (FAC at ¶ 187) when the ADNXS and Taboola trackers were allegedly activated during those visits. *Id.* at ¶¶ 188–89. Notably, Plaintiff fails to allege *any* other interaction with the Website. Plaintiff does *not* allege he (1) created an account; (2) conducted a search; (3) clicked on an item; (4) made a purchase; (5) input any information, let alone any personally identifiable information; (6) engaged in any interaction with the Website beyond visiting it; or (7) had a Microsoft account. Plaintiff does not describe whether he took any actions while visiting the Website, and if he did, he provides no specificity as to what those actions were. While Plaintiff claims a "violation of privacy rights," he fails to allege any facts in support of any actual injury or reasonable expectation of privacy in any information allegedly collected while visiting the Website. *Id.* at ¶ 7.

[1] "Device Metadata" is defined by Plaintiff as "device identifier information such as device type, browser type, and unique and persistent identifiers." FAC ¶ 2. Plaintiff does not explain what he means by "unique and persistent identifiers."

Companies are well accustomed to defending similar lawsuits filed by Plaintiff and his counsel, Bursor & Fisher. Currently, Bursor & Fisher has over 50 pending cases in the Northern District of California alleging various CIPA violations based on the use of ubiquitous tracking technologies on public websites. Plaintiff himself filed a nearly identical lawsuit on August 26, 2025, in Santa Clara County: *Nguyen v. Yahoo, Inc.* No. 25CV474001 (Santa Clara Cnty. Super. Ct. Aug. 26, 2025). RFJN Ex. A. In *Yahoo*, Plaintiff claims that the PubMatic Tracker was active on Yahoo's website and collected his IP address and other device identifier information in violation of CIPA § 638.51. *Id.* Plaintiff further alleges that the PubMatic Tracker syncs the cookie value with Microsoft's ADNXS tracker; yet notably, the complaint does *not* allege the Microsoft ADNXS tracker qualifies as a pen register. *Id.* At bottom, Plaintiff's allegations are insufficient to state a claim under CIPA § 638.51 and should be dismissed.

## ARGUMENT

### I. PLAINTIFF LACKS ARTICLE III STANDING.

#### A. Standard For Motions To Dismiss Under Rule 12(b)(1) Subject Matter Jurisdiction.

This Court must dismiss actions that lack subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Plaintiff, as "the party seeking to invoke the [] jurisdiction" of an Article III federal court, bears "the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).

"A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion,* 594 U.S. at 423. For a Rule 12(b)(1) facial attack on subject-matter jurisdiction, a court applies the same standard as it would a motion to dismiss under Rule 12(b)(6). *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

The Supreme Court has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to

authorize that person to sue to vindicate that right.'" *TransUnion*, 594 U.S. at 426 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). As the Supreme Court explained: "[f]or standing purposes . . . an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of . . . law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of . . . law." *Id.* at 426–27. Without this distinction, legislatures could "authorize virtually any citizen to bring a statutory damages suit against virtually any defendant who violated virtually any . . . law." *Id.* at 428. Instead, "[o]nly those plaintiffs who have been "*concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427 (emphasis in original).

**B. Plaintiff Fails To Allege A Concrete Harm.**

Plaintiff does not and cannot allege any cognizable injury and thereby lacks statutory standing to assert a claim under CIPA § 638.51. Whether a harm qualifies as "concrete" hinges on whether the alleged injury to the plaintiff bears a "close relationship" to a harm "traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 594 U.S. at 425; *see also Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025) ("[T]here existed no free-roaming privacy right at common law but rather four discrete torts that protected specific kinds of privacy-related harms."). A "bare procedural violation[] divorced from any concrete harm ... does not suffice for Article III standing." *TransUnion* 594 U.S. at 440. An injury in fact does not necessarily exist merely because "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation.").

Here, Plaintiff's FAC falls short of establishing that he suffered *any injury*, let alone one sufficient to confer Article III standing. Plaintiff's only conceivable allegation of a harm are the conclusory assertions that Plaintiff suffered a "violation of privacy rights" or "invasion of privacy" due to the technology allegedly deployed on the Website. FAC ¶¶ 7, 123–26. The common law analogue for this alleged violation is an invasion of privacy claim under California common law, which requires Plaintiff to plead "a legally protected privacy interest, reasonable expectation of privacy, and serious invasion of privacy." *Loder v. City of Glendale*, 14 Cal. 4th 846, 891 (Cal. 1997).

Further, to demonstrate an injury-in-fact under CIPA § 638.51, a plaintiff must identify the "specific personal information she disclosed that implicates a protectable privacy interest." *Khamooshi v. Politico LLC,* 786 F. Supp. 3d. 1174, 1179 (N.D. Cal. 2025) (Kim, J.); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (citation omitted). A concrete injury arises only where the disclosure would be considered "highly offensive to a reasonable person." Khamooshi, 786 F. Supp. 3d at 1180. Thus, whether "the right to privacy is implicated depends on 'the sort of information revealed.'" *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 926 (C.D. Cal. 2025). Plaintiff makes no effort to establish a close relationship between his purported injury and a traditional harm.

### C. Plaintiff Fails To Plausibly Allege A Legally Protected Privacy Interest.

The naked assertion that a plaintiff suffered an invasion of privacy is not enough to establish standing. Courts have routinely dismissed similar CIPA claims for lack of standing where, as here, the plaintiff does not allege the disclosure of *any* personal information. *See Khamooshi,* 786 F. Supp. 3d. at 1183; *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) (Donato, J.).[2] The FAC here contains only a conclusory allegation of a bare procedural CIPA § 638.51 violation based on trackers on the Website. FAC ¶ 189. Plaintiff alleges the trackers "collected and recorded Plaintiff's IP address, Device Metadata, and set a cookie with a unique user ID" that allowed tracking "across multiple Website sessions and even other websites" and "de-anonymize[d] Plaintiff" by

[2] *See e.g., Bradshaw v. Lowe's Companies, Inc.,* No. 25cv0742 DMS (MMP), 2025 WL 3171740, at *4-6 (S.D. Cal. Nov. 12, 2025) (holding that collection of "IP addresses," undefined "unique identifiers," and "browsing information" are insufficient to support standing); *Oganyan v. Biolife Plasma Servs. L.P.,* No. 1:25-cv-00099-KES-SKO, 2025 WL 2979619, at *2-4 (E.D. Cal. Oct. 22, 2025) (holding that collection of IP and email address is not "embarrassing, invasive, or otherwise private information."); *Rodriguez v. Culligan Int'l Co.,* No. 25-cv-0025-AJB-KSC, 2025 WL 3064113, at *3-5 (S.D. Cal. Nov. 3, 2025) (holding that collection plaintiff's "IP address, [her computer's] operating system name, operating system version number, browser name, browser version number, browser language, screen resolution, geolocation data, email address, mobile ad IDs, embedded social media identities, customer and/or loyalty IDs, cookies and device signature – as well as the connections between them" does not satisfy standing); *Gabrielli v. Insider, Inc.,* No. 24-CV-01566 (ER), 2025 WL 522515, at *5 (S.D.N.Y. Feb. 18, 2025) (holding that an IP address does not "implicate privacy interests in the same manner that the collection of an individual's private browsing and search histories does"); *Xu v. Reuters News & Media Inc.*, No. 24 CIV. 2466 (PAE), 2025 WL 488501, at *4 (S.D.N.Y. Feb. 13, 2025) (collecting cases); *Rodriguez v. Fountain9, Inc.,* No. 24STCV04504, 2024 WL 3886811, at *4 (Cal. Super. July 9, 2024) (plaintiff "fails to allege a concrete injury-in-fact" because the only allegedly personal information collected was her IP address).

"synchronizing his user with other entities." *Id*. These vague and generalized allegations are not enough to assert a protectable privacy interest sufficient to confer Article III standing.

First, "[c]ourts have held that there is no legally protected privacy interest in an IP address or, in many contexts, in such relatively quotidian private information as an email address." *Wooten v. Biolife Plasma Servs. L.P.*, No. 25-cv-00099-KES-SKO, 2025 WL 2979619, at *3 (E.D. Cal. Oct. 22, 2025); *see also Khamooshi,* 786 F. Supp. 3d. at 1179; *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034 (N.D. Cal. 2022); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855 (S.D. Cal. 2023); *Heeger*, 509 F. Supp. 3d at 1189-90; *see also Forrester*, 512 F.3d at 510. The Ninth Circuit explained in *Forrester* that "e-mail and Internet users have no expectation of privacy in . . . the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information." 512 F.3d at 510. A person generally "has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Khamooshi,* 786 F. Supp. 3d. at 1179. Furthermore, "IP addresses are information about an address associated with a device, not sensitive personal information." *Id*. Thus, "an IP address . . . is not sufficiently private or personal to be analogous to the type of harm recognized in traditional privacy torts." *Id.* at 1180; *Rodriguez v. Brushfire Recs.*, No. 2:25-CV-09797-CAS-PDX, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) ("Defendant's acquisition of plaintiff's IP address and other device identifiers from her visit to defendant's website "does not cause the kind of harm that can be vindicated in federal court.").

Second, the "Device Metadata," defined by Plaintiff as "device identifier information such as device type, browser type, and unique and persistent identifiers" (FAC ¶ 2), also is not sensitive personal information sufficient to confer Article III standing. While Plaintiff does not explain what he means by "unique and persistent identifiers," courts have held that an allegation that the defendant disclosed "other identifying information" without any more detail meant that allegation was "too vague to assert a protectable privacy interest." *Khamooshi*, 786 F. Supp. at 1179; *see Mikulsky*, 682 F. Supp. 3d at 864 (granting motion to dismiss for lack of standing because "the Court is unable to determine whether the 'personal information' Plaintiff inputted is protected or whether it was merely

information akin to basic contact information that would not trigger a protectable privacy interest"). As others have done, this Court too should ignore this conclusory allegation.

///

Plaintiff's device and browser information also does not implicate a privacy interest. *See Ji v. Naver Corp.*, No. 21-cv-05143-HSG, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022) (collection of "user and device identifiers" could not give rise to "a privacy injury"). In *Hughes v. Vivint, Inc.*, the court held that allegations that the defendant collected "device and browser information" was insufficient to specify what information was captured, let alone whether it was "such a kind that it implicates a protectable privacy interest." No. CV 24-3081-GW-KSX, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024), adopted, No. CV 24-3081-GW-KSX, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024); *see also I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (Gonzalez Rogers, J.) (holding that disclosure of such information would not be "highly offensive to a reasonable person"). This information, at best, provides insight into the device that is being used to access the Website, *not* the person.

Third, Plaintiff alleges that he was tracked across multiple websites, and his information was somehow de-anonymized, yet he provides no facts to support these claims or identify what personal information was allegedly disclosed. These allegations have been rejected in other cases. In *Mitchener v. CuriosityStream, Inc.*, the plaintiff alleged the software at issue "gather[s] device and browser information, geographic information, referral tracking, and URL tracking ... to send the visitor's details to TikTok," and "collects as much data as it can ... and matches it with existing data that TikTok has acquired." No. 25-CV-01471-NW, 2025 WL 2272413, at *4 (N.D. Cal. Aug. 6, 2025) (Wise, J.). Judge Wise held these allegations were conclusory and the collection of this data did not intrude on the plaintiff's right to privacy. *Id.* The plaintiff's allegations that defendants "*could* gain 'additional information about [a] visitor such as name, date of birth, and address,' and that allegation *could* intrude on Plaintiff's right to privacy" failed "to convert that hypothetical into concrete harm." *Id.* at *5 (emphasis in original). Plaintiff's allegations here are no less conclusory and speculative. At bottom, Plaintiff has no legally protected privacy interest in some vague category of information allegedly collected.

**D. Plaintiff Fails To Allege Collection Of Any Private Information.**

Plaintiff's failure to allege that he provided specific personal information when visiting the Website is insufficient to establish injury in fact as a matter of law. *Posadas v. Goodyear Tire & Rubber Co.,* No. 23-cv-0402, 2024 WL 5114133, at *4 (S.D. Cal. Dec. 13, 2024) ("Rather than identify personal information he shared during his visit to the Website, Plaintiff makes generalized and conclusory allegations" that "are insufficient to assert that Plaintiff suffered a concrete injury."); *Byars v. Sterling Jewelers, Inc.*, No. 5:22-CV-01456-SB-S, 2023 WL 2996686 at *3 (C.D. Cal. Apr. 5, 2023) ("Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest.").

In *Heiting v. FKA Distributing Co.*, the court held that the plaintiff's complaint failed to allege Article III standing for a CIPA § 638.51 claim because she failed to allege "basic facts" such as "when and how many times she visited the site, what information she provided, what information Defendant captured, whether she was aware of Defendant's tracking practices, or if she has any reason to believe that she was indeed de-anonymized." No. 2:24-CV-07314-HDV-AGR, 2025 WL 736594, at *2 (C.D. Cal., Feb. 3, 2025). Likewise, in *Hughes*, the court held that the plaintiff's CIPA § 638.51 claim failed to allege Article III standing because the plaintiff did not allege "any of the basic facts concerning her interaction with the Website, including when she visited it and what occurred during her visit." 2024 WL 5179916, at *4; *see also Daghaly v. Bloomingdales.com, LLC*, 697 F. Supp. 3d 996, 1000 (S.D. Cal. 2023) aff'd on other grounds, No. 23-4122, 2024 WL 5134350, at *2 (9th Cir. Dec. 17, 2024) ("[Plaintiff] does not assert . . . [she] took any actions other than simply opening the webpage and then closing it. . . . [Plaintiff] has thus failed to 'clearly allege facts demonstrating' that she 'suffered an injury in fact that is concrete, particularized, and actual or imminent.'").

Here, Plaintiff's FAC is similarly defective because it alleges nothing other than that he "regularly visited the Website." FAC ¶ 187. His FAC is devoid of *any* facts describing what, if anything, he did on the Website. Plaintiff makes no allegations that his name, home address, email address, telephone number, birthdate, or any other personal information was collected by the so-

called trackers. Plaintiff merely alleges that he accessed the Website from November 2024 through March 2025 and that these trackers were installed on his browser during those visits. FAC ¶¶ 187–88. While Plaintiff alleges that these trackers collect "users' IP address," "unique identifiers," and "Device Metadata" (FAC ¶¶ 69–71, 105–09), these pieces of information are insufficient to identify Plaintiff and do not constitute the specific personal information giving rise to Article III standing in this type of case. *In re Zappos.com, Inc.*, 888 F.3d 1020, 1023 (9th Cir. 2018) (listing "personal identifying information" as "names, account numbers, passwords, email addresses, billing and shipping addresses"); *see also Heiting*, 2025 WL 736594, at *3 ("In sum, Plaintiff's bare allegation that she visited Defendant's website is insufficient to establish injury in fact, and therefore insufficient to establish standing.").

Absent any allegation showing that Plaintiff's ***private information*** was actually collected or disclosed, and further allegations concerning how, if at all, Plaintiff was injured by the interception, Plaintiff's factual support for standing is abstract at best. *See TransUnion*, 594 U.S. at 440 (requiring an alleged injury to be "real and not abstract"). Because his FAC is devoid of any facts about his own interactions with the Website and fails to identify any information that if collected could plausibly implicate a privacy interest, Plaintiff fails to establish standing, and his claim should be dismissed.

## II. PLAINTIFF FAILS TO STATE A CLAIM UNDER CIPA § 638.51.

### A. Standard For Motion To Dismiss Under 12(b)(6) Failure To State A Claim.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads *factual* content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). "On a motion to dismiss, the Court accepts the material facts alleged in the complaint, together with all reasonable inferences to be drawn from those facts, as true." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-CV-01393-JST, 2017 WL 2672113, at *1 (N.D. Cal. Jan. 19, 2017). However, the Court need not assume the truth of legal conclusions merely because they are pleaded in the form of factual

allegations. *Iqbal,* 556 U.S. at 677–79; *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (*per curiam*). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**B. Plaintiff Fails To Adequately A § 638.51 Violation.**

Plaintiff cannot state a claim under CIPA § 638.51 because the technologies at issue here, ADNXS and Taboola, are not pen registers as a matter of law. The statute defines "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information . . . but not the contents of a communication." Cal. Penal Code § 638.50(b). To be a pen register, a device must record outgoing data, such as "the numbers dialed on a telephone," not the caller's own phone number. *See United States v. New York Tel. Co.*, 434 U.S. 159, 161 n.1 (1977); Cal. Penal Code § 638.50(b) (a pen register records or decodes "information transmitted by an instrument or facility"). Here, Plaintiff's IP address is akin to the caller's own phone number which does not involve the recording of outgoing data. *See Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024 WL 5184413, at *2 (Cal. Super. Oct. 2, 2024) ("Plaintiff's IP address is not the type of information collected by pen registers" because "[p]en registers collect outgoing information").

In *Aviles v. Liveramp, Inc.*, the plaintiff asserted a § 638.51 claim. 2025 WL 487196 (Cal. Super. Jan. 28, 2025). The court held the plaintiff failed to adequately allege use of a pen register or trap and trace device. *Id.* at *2-3. The court determined that the "analog of the number dialed by a telephone here is the IP address and related information of a website accessed by a computer—but not the computer's own IP address or identifying information." *Id.* at *2. "Plaintiff does not allege that the [tracking script]—or any other software installed on users' devices by the Website—collects the outgoing addressing information from visitors' devices or browsers." *Id.* "Plaintiff at most alleges that Defendant's Website collects the IP addresses and other information of visitors incoming to the website—the equivalent of if Defendant had used a trap and trace device on its own website, rather than on Plaintiff's device." *Id.* at 3 ("[w]ithout alleging that Defendant installed software on Plaintiff's device or browser that collected incoming contact information to Plaintiff's device, Plaintiff has not alleged anything above and beyond how the internet normally works.").

Plaintiff's allegations here suffer from the same defect. Plaintiff alleges that Macy's collected

his IP address and Device Meta Data. FAC ¶¶ 187–88. Plaintiff even acknowledges that the technology is "analogous to a telephone number (the public IP address) and the specific handset that is making the call (the Device Metadata)." *Id.* at ¶ 36 n. 2. But plaintiff does *not* allege that Macy's—or any tracking technology—collected incoming contact information to Plaintiff's device.

Moreover, Plaintiff's allegations concerning downstream use of the data are irrelevant. As *Aviles* makes clear, "downstream use of data is not part of the definitions of pen registers or trap and trace devices." 2025 WL 487196 at *2–3. It is the method of collection at issue, not the use of data. Because the method of collection alleged here does not involve a pen register or trap-and-trace device, Plaintiff has not stated a viable § 638.51 claim, and it should be dismissed.

**C. Plaintiff Fails To Allege Facts Sufficient To Show That He Had A Cognizable Privacy Interest In the Allegedly Intercepted Information.**

Furthermore, courts have held that a claim under § 638.51 is actionable only if the claimant has a cognizable privacy interest in the information claimed to be intercepted. In *Plivo,* the court explained that "because what constitutes a pen register has changed as technology has shifted from telephone communication to internet-based communications," the "courts must look to the *type of information being collected and not the device or process*." 2024 WL 5184413, at *2 (emphasis added). Thus, much like the argument above regarding Article III, courts have also dismissed § 638.51 claims based on a defendant's alleged use of trackers where the plaintiff failed to allege that the software captured information in which the plaintiff has a cognizable privacy interest. *See id.*; *Fountain9*, *Inc*., 2024 WL 3886811, at *4 (alleged injury based on alleged capture of IP address was "abstract and hypothetical"); *Licea*, 2024 WL 1698147, at *4 (granting demurrer of § 638.51 claim based on alleged collection of IP address).

Here, Plaintiff alleges he visited the Macy's website between November 2024 and March 2025 and trackers on the website collected Plaintiff's IP Address and "Device Metadata." FAC ¶¶ 187–88. Plaintiff also alleges that Macy's set "a cookie with a unique user ID" and that he was tracked "across multiple Website sessions and even other websites" and "de-anonymize[d] . . .by synchronizing his user profile amongst each other and with other entities." *Id.* ¶ 187. This is insufficient for multiple reasons.

First, Plaintiff voluntarily provided his IP address and therefore had no expectation of privacy in it. *See Plivo, Inc.*, 2024 WL 5184413 at *2. Plaintiff alleges nothing that shows his IP address was ever used to identify him. In fact, courts have found that an IP address "cannot identify an individual user and at most conveys general geographic information." *Gabrielli*, 2025 WL 522515, at *5. The court in *Gabrielli* noted that "[n]ot only does an IP address fail to identify the actual individual user, but the geographic information that can be gleaned from the IP address is only 'as granular as a zip code.'" *Id.* at *4. Macy's acknowledges that some judges in this district have concluded that IP addresses are "addressing" information under § 638.51. *See, e.g., Shah v. Fandom, Inc.,* 754 F. Supp. 3d 924, 928–29 (N.D. Cal. 2024) (Lin, J.). However, these decisions do not explain how the general geographic information provided by IP addresses is sufficient to implicate a privacy interest. The Court should decline to follow these decisions.

Second, Plaintiff alleges no facts to support that the "Device Metadata," which he vaguely defines as "device type, browser type, and unique and persistent identifiers" (FAC ¶2), can be tied back to him. Plaintiff also does not allege any facts to support that he was tracked across multiple websites, that he was de-anonymized, or that he had a privacy interest in any of the information allegedly collected as a result. Plaintiff's "conclusory labeling of the information collected as 'personally identifying' . . . does not allege that anyone could actually identify *him*." *Gabrielli*, 2025 WL 522515, at *4 (emphasis in original). As discussed above, the plaintiff in *Mitchener* alleged the software at issue "gather[ed] device and browser information, geographic information, referral tracking, and URL tracking," but the court held this information did not implicate a privacy interest. *Mitchener*, 2025 WL 2272413, at *1, 5–6. Thus, Plaintiff has not identified a privacy interest in this information and therefore cannot be said to state an actionable CIPA claim.

### D. Plaintiff's Claim Falls Outside The Zone Of Interest Protected By Statute And Therefore Fails.

Plaintiff's claim falls outside the zone of interest protected by the CIPA statute because individuals do not have a legally protected interest in information that is allegedly transmitted as part of the normal operation of the internet. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (citations omitted) ("[A] statutory cause of action extends only to plaintiffs

whose interests 'fall within the zone of interests protected by the law invoked.'"). Whether a plaintiff falls within the zone of interest is a question of statutory interpretation separate from Article III and requires a court to consider whether a plaintiff falls within the class of plaintiffs whom the legislature has authorized to sue. *See id.* at 126–28. Section 630 specifies that the California Legislature enacted CIPA "to protect the *right of privacy* of the people of [California]." Cal. Penal Code § 630 (emphasis added). Thus, a claim under § 638.51 is actionable only if the claimant has a cognizable privacy interest in the information intercepted.

As previously discussed, Plaintiff does not have a legally protected interest in information, such as IP addresses, that are transmitted as part of the normal operation of the internet. *See Forrester*, 512 F.3d at 503 ("[E]-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information."). That Plaintiff does not have a legally protected privacy interest here makes sense, as the conveyance at issue is a normal part of the standard operation of the internet. *See id.*; *United States v. Auernheimer,* 748 F.3d 525, 530 (3d Cir. 2014) ("A user agent tells a website what kind of browser and operating system a user is running, so servers that someone is attempting to access can format their responses appropriately."). As the California superior courts have recognized, every website records IP addresses — that is what "makes the internet possible." *Casillas*, 2024 WL 4873370, at *4; *see Licea,* 2024 WL 1698147, at *4 ("[p]ublic policy strongly disputes Plaintiff's potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator."). The *Licea* court further reasoned that "[s]uch a broad based interpretation would potentially disrupt a large swath of internet commerce without further refinement as the precise basis of liability, which the court declines to consider." *Id.* Surely, "[t]he pen register statute did not, and does not, criminalize the process by which all websites communicate with all users who choose to access them." *Casillas*, 2024 WL 4873370, at *4; *see Aviles*, 2025 WL 487196, at *3 (dismissing claim where "Plaintiff has not alleged anything above and beyond how the internet normally works").

This conclusion is also supported by cases interpreting the Federal Pen Register Act. *Capitol Recs. Inc. v. Thomas-Rasset*, No. CIV 06-1497-MJD/RLE, 2009 WL 1664468, at *1, 3 (D. Minn. June 11, 2009) (finding the federal "Pen Register Act cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them[,]" and noting that "[i]f it did apply in those cases, then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet."); *Malibu Media, LLC v. Pontello*, No. 13-12197, 2013 WL 12180709, at *4 (E.D. Mich. Nov. 19, 2013) ("Because the IP address was voluntarily sent, the Pen Register Act cannot prevent [plaintiff] from recording that information."). Given the consensus between California state courts interpreting § 638.51 and federal courts interpreting analogous federal law, this Court should decline to adopt Plaintiff's expansive reading of § 638.51.

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023), a non-binding and distinguishable out-of-district case, cannot salvage Plaintiff's claim. For one, a California state court has already found *Greenley* "unpersuasive" in determining whether a defendant website can be subject to liability under § 638.51, as *Greenley* analyzed this issue only in relation to "a data broker that provided software to application developers in return for which it surreptitiously intercepted location data from application users[,]" rather than, as here, the operator of the website that Plaintiff allegedly visited. *Casillas v. Transition Optical Inc.,* No. 23STCV30742, Minute Order, at 3 (Cal. Super. Apr. 23, 2024), available at https://rulings.law/rulings/judge-bruce-g-iwasaki/23stcv30742-2024-04-23.html (sustaining demurrer of pen register claim alleging "that Defendant's website . . . deployed tracking software that relies upon the user's unique Internet Protocol address (IP address)").[3] Indeed, a California state court recently dismissed a § 638.51 claim that was directed toward the website operator as opposed to the technology provider. *Fountain9*, 2024 WL 3886811, at *4 ("Plaintiff alleges Defendant's non-party software developer, *not* Defendant, packages and sells the information alleged in the FAC to third parties for advertising and marketing purposes.").

---

[3] While state California Rule of Court 8.1115 prohibits citing unpublished opinions, it is "not binding on this federal court[,]" which recently deleted its Local Rule prohibiting the citation of unpublished decisions. *Parducci v. Overland Sols., Inc.*, No. 18-cv-07162-WHO, 2020 WL 4193368, at *5 (N.D. Cal. July 21, 2020).

Furthermore, the information allegedly transmitted in *Greenley*—cell-site location information data ("CSLI")—is markedly different from the information Plaintiff in this case alleges was transmitted. *Greenley*, 684 F. Supp. 3d at 1035. CSLI differs significantly from IP addresses in that "CSLI data is much more sticky and persistent, as it is generated 'several times a minute whenever [a cell phone's] signal is on, even if the owner is not using one of the phone's features.' . . . IP address data is far less finely detailed." *Heeger*, 509 F. Supp. 3d at 1189-90 (describing CSLI and IP addresses as "apples and oranges for privacy purposes"). In other words, *Greenley* did not analyze either the facts or the technology at issue here, and its reasoning is inapplicable to the vague and conclusory allegations in this case. For these reasons, § 638.51 does not apply to the alleged conduct at issue here, and Plaintiff's CIPA claim should be dismissed.

## III. INTERPRETATION OF CIPA SECTION 638.51 IS SUBJECT TO THE RULE OF LENITY.

CIPA § 638.51 is a criminal statute. Cal. Penal Code § 638.51(c). As such, Section 638.51's interpretation is subject to the rule of lenity, which requires that "'[w]hen choice has to be made between two readings of what conduct [the Legislature] has made a crime, it is appropriate, before we choose the harsher alternative, to require that [the Legislature] should have spoken in language that is clear and definite.'" *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (quoting *Jones v. United States*, 529 U.S. 848, 858 (2000)); *see Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025) (applying rule of lenity to Section 638.51). "When courts are called upon to interpret ambiguous criminal statutes in California, the rule of lenity applies—even when the statute is being invoked in a civil action." *Doe v. Eating Recovery Ctr. LLC,* No. 23-cv-05561-VC, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025) (Chhabria, J.). Thus, "[e]ven though most CIPA cases are private civil actions, the interpretations courts adopt while adjudicating those actions could affect the extent to which people or companies are subject to criminal liability." *Id.* at *6 (noting that "data analytics for web traffic is worlds different from wiretapping and eavesdropping"); *cf. Garon v. Keleops USA, Inc.*, No. 25-CV-02124-DMR, 2025 WL 2522374, at *6 (N.D. Cal. Sept. 2, 2025) (Ryu, J.) (holding the rule of lenity does not apply without identifying ambiguity or uncertainty). "If there is any doubt about whether [the Legislature]

intended to prohibit the conduct in which [defendant] engaged, then 'we must choose the interpretation least likely to impose penalties unintended by [the Legislature].'" *United States v. Cabaccang*, 332 F.3d 622, 635 n.22 (9th Cir. 2003).

There is reason to question whether the Legislature intended for CIPA to apply to the type of conduct implicated by this case at all. As the court noted in *Sanchez,* "the legislative history of the CIPA suggests that 'pen register' and 'track and trace devices' refers to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, not internet communications such as websites." 2025 WL 487194, at *3. Specifically, the court noted that "the California Legislature adopted the same authorization provision in CIPA section 638.52 that courts have relied on under the federal Pen Register Act to find that the Act applied only to mechanical, telephone number-tracing technology, not technology used to collect the IP address from a desktop computer." *Id.* Macy's acknowledges that some judges in this district have concluded that CIPA applies to the internet. *See, e.g., Garon*, 2025 WL 2522374, at *4. However, the ambiguity in CIPA merits the application of the rule of lenity.

**CONCLUSION**

For the foregoing reasons, Macys.com, LLC respectfully requests the Court grant this Motion in its entirety.

Dated: January 29, 2026

Respectfully submitted,

**SHOOK, HARDY & BACON, LLP**

By: *<u>/s/ Tammy B. Webb</u>*
Tammy B. Webb
Matthew G. Ball
Aubrey Kramer

*Attorneys for Defendant Macys.com LLC*