**BURSOR & FISHER, P.A.**
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: klynn@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main St., Ste. 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (State Bar No. 363482)
Victoria X. Zhou (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com
vzhou@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THU NGUYEN, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MACY'S.COM, LLC.,<br><br>Defendant. | Case No. 5:25-cv-07096-PCP<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date: April 23, 2026<br>Time: 10:00 a.m.<br>Ctrm: 8, 4th Floor<br>Judge: Hon. P. Casey Pitts |

# TABLE OF CONTENTS

**PAGE**


INTRODUCTION .......... 1

ARGUMENT .......... 2

I. NGUYEN HAS BEEN CONCRETELY INJURED BY DEFENDANT'S INSTALLATION AND USE OF THE TRACKERS .......... 2

A. Defendant's Installation And Use Of The Trackers Facilitated The Profiling Of Nguyen And The Widespread Dissemination Of His Profile To Advertisers Without Consent .......... 2

B. Defendant Was Unjustly Enriched Through Its Installation And Use Of The Trackers .......... 5

C. Defendant's Factual Arguments Are Unpersuasive .......... 5

D. Defendant's Legal Authorities Are Inapposite .......... 7

II. NGUYEN HAS SUFFICIENTLY PLED A CIPA § 638.51 CLAIM UNDER THE PREVAILING LAW .......... 12

A. The Trackers Recorded Thu's "Routing, Addressing, Or Signaling Information" Transmitted By His Computer .......... 12

B. Defendant's "Downstream" Use Argument Misses The Mark .......... 14

C. IP Addresses, Device Metadata, And Unique User Identifiers Are "Routing, Addressing, And Signaling Information" .......... 15

III. NGUYEN HAS STATUTORY STANDING .......... 17

IV. DEFENDANT'S RULE OF LENITY ARGUMENT FAILS .......... 20

CONCLUSION .......... 23

## TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Aviles v. LiveRamp, Inc.*,
2025 WL 487196 (Los Angeles Super. Ct. Jan. 28, 2025)........ 14, 15

*Bradshaw v. Lowe's Cos., Inc.*,
2025 WL 3171740 (S.D. Cal. Nov. 12, 2025)........ 11

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023)........ 9

*Camplisson v. Adidas Am., Inc.*,
2025 WL 3228949 (S.D. Cal. Nov. 18, 2025)........ 3, 11, 16

*Capitol Recs. Inc. v. Thomas-Rasset*,
2009 WL 1664468 (D. Minn. June 11, 2009)........ 19

*Casillas v. Transitions Optical, Inc.*,
2024 WL 4873370 (Los Angeles Super. Ct. Sep. 9, 2024)........ 19

*Chai v. Velocity Investments, LLC*,
108 Cal. App. 5th 1030 (2025)........ 18

*Conohan v. Rad Power Bikes Inc.*,
2025 WL 1111246 (C.D. Cal. Apr. 3, 2025)........ 8

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024)........ 14

*Daghaly v. Bloomingdales.com, LLC*,
2024 WL 5134350 (9th Cir. Dec. 17, 2024)........ 8

*D'Antonio v. Smith & Wesson Inc.*,
2026 WL 446310 (N.D. Cal. Feb. 17, 2026)........ 1

*Deivaprakash v. Condé Nast Digital*,
798 F. Supp. 3d 1100 (N.D. Cal. 2025)........ passim

*Deivaprakash v. Condé Nast Digital*,
2025 WL 2779193 (N.D. Cal. Sept. 30, 2025)........ 3

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025)........ 21

*Doe v. Talkiatry Management Servs., LLC*,
2025 WL 3190813 (C.D. Cal. Oct. 1, 2025)........ 13

*Drummer v. Costar Grp., Inc.*,
2025 WL 3190656 (C.D. Cal. Oct. 22, 2025) ........ passim

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ........ 21

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) ........ 4

*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ........ passim

*Fregosa v. Mashable, Inc.*,
2026 WL 183857 (N.D. Cal. Jan. 26, 2026) ........ 1, 19

*Gabrielli v. Insider, Inc.*,
2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ........ 10, 11, 17

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) ........ 3, 22

*Garon v. Keleops USA, Inc.*,
2025 WL 2522374 (N.D. Cal. Sept. 2, 2025) ........ 14, 21

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ........ 17

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........ 5

*Harris v. iHeartMedia, Inc.*,
2026 WL 247875 (N.D. Cal. Jan. 29, 2026) ........ passim

*Hassid v. Alex and Ani, LLC*,
2026 WL 160535 (C.D. Cal. Jan. 20, 2026) ........ 3, 5

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ........ 10, 11

*Heiting v. FKA Distributing Co.*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025) ........ 7

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. July 12, 2024) ........ 8

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ........ 10

*In re Accellion, Inc. Data Breach Litig.*,
2025 WL 2799102 (N.D. Cal. Sept. 30, 2025) ........ 4

*In re Application of U.S. for an Order Authorizing Use of A Pen Register and Trap On (XXX) Internet Service Account/User Name [xxxxxxxx@*xxx.com],
396 F. Supp. 2d 45 (D. Mass. 2005) .......... 22

*In re Google RTB Consumer Privacy Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... 5

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) .......... 1, 21

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 11, 16

*Ji v. Naver Corp.*,
2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) .......... 10

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) .......... 9, 11

*Kashanian v. Nat'l Enterprise Sys., Inc.*,
114 Cal. App. 5th 1037 (2025) .......... 18

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) .......... 9

*Krzyzek v. OpenX Techs., Inc.*,
2026 WL 206855 (N.D. Cal. Jan. 27, 2026) .......... 3, 7, 13

*Lesh v. Cable News Network, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025) .......... 11, 18

*Lewis v. Magnite, Inc.*,
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025) .......... 19, 21, 22

*Licea v. Hickory Farms LLC,*
2024 WL 1698147 (Los Angeles Super. Ct. Mar. 13, 2024) .......... 19

*Maketa v. Valnet, Inc.*,
2026 WL 323126 (N.D. Cal. Feb. 6, 2026) .......... 2

*Malibu Media, LLC v. Pontello*,
2013 WL 12180709 (E.D. Mich. Nov. 19, 2013) .......... 19

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .......... 21

*McClung v. AddShopper, Inc.*,
2024 WL 189006 (N.D. Cal. Jan. 17, 2024) .......... 4

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ........ 8

*Mitchener v. CuriosityStream, Inc.*,
2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ........ 9

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ........ 17, 19, 22

*Nelson v. Reddit, Inc.*,
2026 WL 445627 (S.D. Cal. Feb. 17, 2026) ........ 13, 14, 16, 21

*Ocasio v. United States*,
578 U.S. 282 (2016) ........ 20

*Pemberton v. Restaurant Brands Int'l, Inc.*,
2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) ........ 8

*Pileggi v. Washington Newspaper Publishing Co.*,
146 F.4th 1219 (D.C. Cir. 2025) ........ 12

*Posadas v. Goodyear Tire and Rubber Co.*,
2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) ........ 8

*Prang v. Los Angeles County Assessment Appeals Board*,
15 Cal. 5th 1152 (2024) ........ 14

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025) ........ 6, 8, 18

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ........ 21

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ........ 11, 16

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) ........ 8

*Rodriguez v. Brushfire Records*,
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ........ 9

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ........ 8, 9

*Rodriguez v. Fountain9, Inc.*,
2024 WL 3886811 (Los Angeles Super. Ct. July 9, 2024) ........ 9

*Rodriguez v. Plivo Inc.*,
2024 WL 5184413 (Los Angeles Super. Ct. Oct. 2, 2024) ........ 14

*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017) ........ 23

*Sanchez v. Cars.com Inc.*,
2025 WL 487194 (Los Angeles Super. Ct. Jan. 27, 2025) ........ 21

*Scarlett v. Future US, LLC*,
2025 WL 2614587 (San Francisco Super. Ct. Sept. 5, 2025) ........ 18, 20

*Semien v. PubMatic, Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) ........ 2, 3, 13

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ........ passim

*Shah v. Fandom, Inc.*,
2024 WL 6903081 (N.D. Cal. Dec. 16, 2024) ........ 14

*Shah v. MyFitnessPal, Inc.*,
2026 WL 216334 (N.D. Cal. Jan. 27, 2026) ........ 1, 23

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) ........ 20, 21

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 12

*U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*,
489 U.S. 749 (1989) ........ 3

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ........ 11

*United States v. Soybel*,
13 F.4th 584 (7th Cir. 2021) ........ 22

*Walsh v. Dollar Tree Stores, Inc.*,
2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) ........ 11, 19, 22

*Wiley v. Univ. Music Grp., Inc.*,
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) ........ 1, 23

*Wooten v. Biolife Plasma Servs. L.P.*,
2025 WL 2979619 (E.D. Cal. Oct. 22, 2025) ........ 9

*Wright v. TrueCare Property Holdings, LLC*,
2025 WL 3248749 (S.D. Cal. Nov. 21, 2025) ........ 11, 16

*Xu v. Reuters News & Media Inc.*,
2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) ........ 10

*Xu v. Reuters News & Media, Inc.*,
2025 WL 3035016 (Santa Clara Super. Ct. Oct. 24, 2025) ..... passim

*Yeh v. Barrington Pacific, LLC*,
2026 WL 161299 (Ct. App. Jan. 21, 2026) ..... 18

**STATUTES**

18 U.S.C. § 3127(3) ..... 22

Cal. Civ. Code § 1798.140(v)(1)(A) ..... 20

Cal. Pen. Code § 4 ..... 20

Cal. Pen. Code § 629.51(a)(2) ..... 7

Cal. Pen. Code § 631(a) ..... 22

Cal. Pen. Code § 637.2 ..... 17, 18

Cal. Pen. Code § 638.50 ..... passim

Cal. Pen. Code § 638.51 ..... passim

Plaintiff Thu Nguyen ("Plaintiff" or "Nguyen") respectfully submits this Opposition to Defendant Macy's.com, LLC's ("Defendant") Motion to Dismiss the First Amended Complaint (ECF No. 36) (the "Motion" or "MTD").

## INTRODUCTION

Through seventeen pages of briefing, Defendant fails to acknowledge that this Court has thrice found that technology similar to the Trackers[1] here are "pen registers" under the CIPA. *Shah v. MyFitnessPal, Inc.*, 2026 WL 216334, at *7-8 (N.D. Cal. Jan. 27, 2026) (Pitts, J.); *Wiley v. Univ. Music Grp., Inc.*, 2025 WL 3654085, at *8-9 (N.D. Cal. Dec. 17, 2025) (Pitts, J.); *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1152-55 (N.D. Cal. 2025) (Pitts, J.).[2] Although Defendant tries to sugarcoat it (*see* MTD at 13:7-8, 17:12-13), *every federal court* and numerous state courts have found internet tracking technology similar to the Trackers here to plausibly be a "pen register," including the exact ADNXS Tracker at issue here. *Fregosa v. Mashable, Inc.*, 2026 WL 183857, at *2 (N.D. Cal. Jan. 26, 2026) ("*Fregosa II*") ("*[E]very* federal court to tackle the CIPA applicability question has rejected Mashable's position.") (emphasis in original); *Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *1, *4-6 (N.D. Cal. Oct. 9, 2025) ("*Fregosa I*") (finding ADNXS Tracker was a "pen register"); *Harris v. iHeartMedia, Inc.*, 2026 WL 247875, at *3 (N.D. Cal. Jan. 29, 2026) (same); *Xu v. Reuters News & Media, Inc.*, 2025 WL 3035016, at *1, *3-4 (Santa Clara Super. Ct. Oct. 24, 2025) (same). Defendant's tired arguments should be found just as unpersuasive for the fifth time in front of this Court as they were the first four times.

On standing too, this Court has found that violations of CIPA § 638.51 can cause a concrete injury sufficient for Article III standing (let alone statutory standing). *MyFitnessPal*, 2026 WL 216334, at *2-3; *Wiley*, 2025 WL 3654085, at *6. But Defendant's myopic view of Plaintiff's allegations does a disservice to the privacy harm at issue. Plaintiff does not just allege "a third party collected my IP address and other identifiers." Instead, Plaintiff's allegations detail that, through Defendant's installation and use of Trackers, the Third Parties collected various identifiers from

[1] All terms not defined herein shall have the same meaning as in the First Amended Complaint.

[2] Since the filing of Defendant's Motion, this Court has again held that CIPA § 638.50(b) encompasses internet tracking technology. *D'Antonio v. Smith & Wesson Inc.*, 2026 WL 446310, at *5 (N.D. Cal. Feb. 17, 2026) (Pitts, J.).

Website users (*e.g.*, IP addresses, Device Metadata, unique user identifiers), used those to match consumers to comprehensive, non-anonymous profiles, and sold those profiles to advertisers in the span of milliseconds. *See*, *e.g.*, FAC ¶¶ 2-3, 6, 49-52, 60, 65-66, 72-73, 76, 78, 80-82, 87-88, 91-92, 95, 105, 112, 114-115, 126, 139-142, 144, 149-150, 154, 157, 165-170, 176-177, 180-190, 213. Courts have found such allegations suffice for both Article III and statutory standing. *See*, *e.g.*, *Harris*, 2026 WL 247875, at *1-2; *Deivaprakash v. Condé Nast Digital*, 798 F. Supp. 3d 1100, 1107, 1107 n.4 (N.D. Cal. 2025); *Semien v. PubMatic, Inc.*, 2026 WL 216333, at *4-5 (N.D. Cal. Jan. 27, 2026).

Ultimately, "[a]lthough [Defendant] correctly notes the numerous district court decisions are not controlling, its suggestion that the court chart a different path in this case is not persuasive." *Maketa v. Valnet, Inc.*, 2026 WL 323126, at *1 (N.D. Cal. Feb. 6, 2026) (Seeborg, C.J.). For the following reasons, Defendant's Motion should be denied.

## ARGUMENT

### I. NGUYEN HAS BEEN CONCRETELY INJURED BY DEFENDANT'S INSTALLATION AND USE OF THE TRACKERS

#### A. Defendant's Installation And Use Of The Trackers Facilitated The Profiling Of Nguyen And The Widespread Dissemination Of His Profile To Advertisers Without Consent

Through the information the Third Parties record, Nguyen alleges: (i) he and class members are identified by being linked to comprehensive, non-anonymous profiles maintained by data brokers using the IP addresses, Device Metadata, and unique identifiers collected directly from users on the Website; (ii) that such linkage occurs by bypassing the normal "restriction that sites can't read each other[s'] cookies"; and (iii) that those profiles are offered up for sale to a near endless supply of advertisers without knowledge or consent. *See*, *e.g.*, FAC ¶¶ 2-3, 6, 49-52, 60, 65-66, 72-73, 76, 78, 80-82, 87-88, 91-92, 95, 105, 112, 114-115, 126, 139-142, 144, 149-150, 154, 157, 165-170, 176-177, 180-190, 213.

Courts have found that these allegations satisfy Article III "because the privacy violation extends beyond the collection of just [Nguyen's] IP address and metadata; it encompasses how that collection allegedly allowed the third parties to: (1) build a profile reflecting his personal information; and (2) interfere with his ability to remain anonymous." *Deivaprakash*, 798 F. Supp.

3d at 1107; *see also*, *e.g.*, *Deivaprakash v. Condé Nast Digital*, 2025 WL 2779193, at *2 (N.D. Cal. Sept. 30, 2025) ("Deivaprakash alleges that internet trackers allowed third parties to generate profiles reflecting his personal information. That privacy injury finds historical analogues in injuries redressable under the common law."); *Harris*, 2026 WL 247875, at *1-2 (finding Article III standing where "[p]laintiff asserts that he and other website users are harmed not just by the collection of data, but by being identified and linked to comprehensive, non-anonymous profiles that are offered up for sale to a near endless supply of advertisers without knowledge or consent") (cleaned up); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) ("Gabrielli's allegations that Motorola deprived him control of personal information regarding his digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer standing."); *Camplisson v. Adidas Am., Inc.*, --- F. Supp. 3d ---, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025) (finding Article III standing because "Plaintiffs have alleged that the Trackers on Defendant's website have collected a broad set of their personal identifying and addressing information without their consent and in violation of CIPA. This claim maintains a violation of privacy, particularly in the control of their own information."); *Hassid v. Alex and Ani, LLC*, --- F. Supp. 3d ---, 2026 WL 160535, at *3 (C.D. Cal. Jan. 20, 2026) (same where the plaintiff alleged "defendant's tracking practices enable it to regularly collect personalized information when someone, like plaintiff, visits defendant's Website"); *Semien*, 2026 WL 216333, at *5 (same where "plaintiffs allege that PubMatic created or added to detailed user profiles by tracking their interactions across the internet"); *Krzyzek v. OpenX Techs., Inc.*, --- F. Supp. 3d ---, 2026 WL 206855, at *3 (N.D. Cal. Jan. 27, 2026) (same as to OpenX).

In this way, Nguyen and others lost their right to "control [] information concerning his or her person," which is encompassed within "both the common law and the literal understandings of privacy." *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989); *Harris*, 2026 WL 247875, at *2 ("The Court finds that Plaintiff has alleged the violation of a privacy interest that bears a 'close relationship' to traditional harms – *i.e.*, the loss of the ability to control information about himself and to avoid the broad dissemination of that information."). This is at least analogous to the tort of intrusion upon seclusion, although an exact match is not required.

*Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 580 (N.D. Cal. 2025) ("[T]he harm made actionable at common law was an individual's loss of control over her private affairs or concerns by an interloper's tortious intentional interference.") (cleaned up); *In re Accellion, Inc. Data Breach Litig.*, 2025 WL 2799102, at *13 (N.D. Cal. Sept. 30, 2025) ("[T]he Court concludes the better reading of *TransUnion* is that harms need only be similar in kind to those redressed by common law torts. That is because *TransUnion* expressly rejected the notion that an 'exact duplicate' is required….").

Moreover, Nguyen's harm is traceable to Defendant's conduct. Defendant is alleged to have "enabled the third parties to amass information about [Nguyen] by embedding the code in its [W]ebsite[] that surreptitiously installed the trackers on [Nguyen] browser in the first place." *Deivaprakash*, 798 F. Supp. 3d at 1107; *Xu*, 2025 WL 3035016, at *3 ("[I]t appears Defendant does not account for Plaintiff's allegation that it was responsible for the installation of the Trackers."); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 931 (N.D. Cal. 2024) ("Even if third parties developed and used the Tracker software, it is alleged that Fandom was responsible for integrating the third-party script into its own website.") (cleaned up); *see also*, *e.g.*, FAC ¶¶ 58, 65, 73, 82, 105, 112, 138, 143, 150, 166, 168, 212.

Indeed, the Third Parties' tracking was not only done at Defendant's direction, but for Defendant's benefit as well (*i.e.*, advertising revenue). *See*, *e.g.*, FAC ¶¶ 3, 81, 93, 117, 126, 138, 153, 169, 177, 186. And the harm that befell Nguyen here—the linkage to non-anonymous profiles and the continued building of the same, which were then sold to unlimited numbers of advertisers—occurred directly on Defendant's Website. *See*, *e.g.*, *id.* ¶¶ 65, 73, 82, 94, 105, 112, 188-190. Defendant's "knowing participation in this scheme … is enough to confer standing for a victim of the scheme to sue [Defendant] in federal court." *McClung v. AddShopper, Inc.*, 2024 WL 189006, at *2 (N.D. Cal. Jan. 17, 2024); *Fregosa I*, 2025 WL 2886399, at *8 ("Mashable deliberately embedded third-party trackers on its website, knew that those trackers would capture visitors' IP addresses and device metadata, and used the resulting data in concert with [the third parties] to facilitate targeted advertising. That active role is enough to plead "use" under § 638.51…") (cleaned up). Thus, by facilitating the creation and widespread sale of profiles through its installation and use of the Trackers, Defendant caused Nguyen to suffer a concrete harm sufficient for standing.

**B. Defendant Was Unjustly Enriched Through Its Installation And Use Of The Trackers**

As another basis for standing, Nguyen alleges that Defendant derived an unlawful economic benefit through its installation and use of the Trackers. "Because California law recognizes an entitlement to unjustly earned profits, to establish standing, plaintiffs must only establish a stake in the profits garnered from their personal data and that it is unjust for the defendant to retain those profits." *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1038 (S.D. Cal. 2023) (cleaned up).

Here, Nguyen alleges that, by installing and using the Tracker, Defendant enriched the value its users commanded when their information was shared with advertisers "thanks to the replete information the Third Parties are able to provide about users." FAC ¶ 153; *see also*, *e.g.*, *id.* ¶¶ 6, 117, 126. 144, 167, 169, 177, 186. This also suffices for injury. *See*, *e.g.*, *Greenley*, 684 F. Supp. 3d at 1038 (Article III standing alleged where "Plaintiff … conferred a benefit on Defendant through the use and dissemination of Plaintiff's … personal information … which Defendant used and disseminated for its own monetary benefit.") (cleaned up); *Drummer v. Costar Grp., Inc.*, 2025 WL 3190656, at *3 (C.D. Cal. Oct. 22, 2025) ("Plaintiffs also allege that this collection and transmission economically harms Plaintiffs, because such data underpinning targeted advertising is economically valuable."); *In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 941, 943 (N.D. Cal. 2022) (finding Article III standing where "[t]hrough RTB, Google solicits participants to bid on sending an ad to a specific individual" and "Google provides highly specific information about the target in the bid request … including data that identifies the individual being targeted through unique identifiers, device identifiers, geolocation, IP address, cookie match, and other information").

**C. Defendant's Factual Arguments Are Unpersuasive**

Defendant argues the Third Parties' collection of Nguyen's IP address, Device Metadata, and unique user identifiers "do[] not implicate a privacy interest" and thus do not suffice for Article III standing. MTD at 8:4. Courts have disagreed with that argument. *See*, *e.g.*, *Hassid*, 2026 WL 160535, at *1, *3 (finding Article III standing where third party software "collect[ed] data about Website visitors such as their device and browser information, geographic information, referral tracking, and URL tracking") (cleaned up); *Drummer*, 2025 WL 3190656, at *4 ("District courts

throughout the Ninth Circuit have repeatedly found—subsequent to *TransUnion*—that CIPA claims for IP address collection similar to Plaintiffs' establish standing.").

Defendant's argument misses the forest through the trees. As noted above, Nguyen's claim is not just that the Third Parties recorded his various identifiers:

> *[u]sing IP addresses, device metadata, and unique identifiers*, the [T]hird [P]arties allegedly track users across the internet and build comprehensive user profiles that include an assortment of information, interests, and inferences. The [T]hird [P]arties then sync the user's information with data held by other data brokers to build the most comprehensive user profiles possible. Finally, through a complex bidding process known as Real Time Bidding, the de-anonymized user profiles are auctioned to potential advertisers, with the highest bidder securing the right to deliver an ad to a particular user.

*Harris*, 2026 WL 247875, at *1 (emphasis added; otherwise cleaned up). "Accordingly, it does not matter whether [Nguyen] had a reasonable expectation of privacy in the information collected because the privacy violation extends beyond the collection of just his IP address and metadata." *Deivaprakash*, 798 F. Supp. 3d at 1106-07 (cleaned up).

Relatedly, Defendant argues that Nguyen "provides no facts to support [his] claims or identify what personal information was allegedly disclosed," and that the information collected from Nguyen on the Website was "insufficient to identify" him. MTD at 8:16-17, 10:4-5. As an initial matter, to the extent Nguyen's standing depends on whether the information collected can be used to identify him, that is a question of fact inappropriate for resolution at this juncture. *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *4 (N.D. Cal. Mar. 28, 2025) (denying motion to dismiss because "[r]esolution of the standing issue is intertwined with an element of the merits of plaintiff's claim and cannot be resolved under the summary judgment standard" but must be left to the trier of fact) (cleaned up).

In any event, Defendant is mistaken. As Nguyen alleges, when the Third Parties recorded Nguyen's IP address, Device Metadata, and unique user identifiers, the Third Parties shared that information with various data brokers and data sellers to match Nguyen up to comprehensive, non-anonymous profiles. *See, e.g.*, FAC ¶¶ 49-52, 73, 78, 80, 82, 88, 91-92, 95, 112, 114, 117, 139-141, 165, 180-183, 186, 190; *see also Harris*, 2026 WL 247875, at *1. Thus, it is irrelevant whether

Nguyen provided information like his name and address on Defendant's Website because the information collected about him from the Website (his IP address, Device Metadata, and unique user identifiers) was used to match Nguyen to profiles containing such information. *See Krzyzek*, 2026 WL 206855, at *4 ("Where anonymity is rendered functionally meaningless, lower courts have found pseudonymization arguments unpersuasive.") (cleaned up). And far from this injury being "hypothetical" (MTD at 8:25), Nguyen includes screenshots from his browser traffic showing profile matching actually happened on his visits to Defendant's Website. FAC ¶¶ 188-189 (citing screenshots in FAC).

Last, Defendant argues the FAC "is devoid of any facts describing what, if anything, [Nguyen] did on the Website." MTD at 9:26-27 (cleaned up). But again, Nguyen's injury is about his linkage to non-anonymous profiles that were sold to advertisers, which Nguyen alleges resulted from his visits to the Website. *See*, *e.g.*, FAC ¶¶ 188-189 ("When Plaintiff visited the Website, the Website's code—as programmed by Defendant—caused the Trackers to be installed on Plaintiff's browser … Through their respective Trackers, the Third Parties collected and recorded Plaintiff's IP address, Device Metadata, and set a cookie with a unique user ID that allowed the Third Parties to pervasively track Plaintiff across multiple Website sessions and even other websites, as well as de-anonymize Plaintiff by synchronizing his user [information] with other entities."). Moreover, Nguyen's visit to the Website constitutes an "electronic communication, and the Trackers record[ed] the addressing information associated with this communication." *Fandom*, 754 F. Supp. 3d at 931; *see also* Cal. Pen. Code § 629.51(a)(2) (defining an "[e]lectronic communication" as "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature"). Thus, what other actions Nguyen took on the Website are irrelevant to either his CIPA § 638.51 claim or his standing.

**D. Defendant's Legal Authorities Are Inapposite**

Defendant relies on a host of off-point caselaw, such as *Heiting v. FKA Distributing Co.*, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025). But that court later found standing where the plaintiff's allegations on amendment were more specific, like Nguyen's here. *Heiting v. FKA Distributing Co.*, 2025 WL 736594, at *2 (C.D. Cal. May 15, 2025) ("Plaintiff's SAC now alleges that the software

effectively de-anonymizes the website user and has collected tracking information on her irrespective of her lack of a TikTok account.”).

In *Daghaly v. Bloomingdales.com, LLC*, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024), the plaintiff brought a CIPA § 631(a) claim, meaning the plaintiff had to allege the interception of the contents of their communications. Thus, although the plaintiff alleged she visited the website, “she d[id] not allege that she herself actually made any communications that could have been intercepted once she had accessed the website.” *Id*. By contrast, Nguyen alleges: (i) his “electronic communication” with the Website from which his associated “routing, addressing, or signaling information” was recorded; (ii) what specific pieces of his information were recorded; and (iii) how his specific information was further disclosed and used on the Website and elsewhere as a result of Defendant’s installation and use of the Trackers. *See*, *e.g.*, FAC ¶¶ 188-190. And, of course, Nguyen brings a claim under a different section of the CIPA than in *Daghaly*. Thus, Nguyen’s complaint contains the detail lacking in *Daghaly*. *Conohan v. Rad Power Bikes Inc.*, 2025 WL 1111246, at *6 (C.D. Cal. Apr. 3, 2025) (distinguishing *Daghaly* from complaint before the court where more detailed allegations were present). *Posadas v. Goodyear Tire and Rubber Co.*, 2024 WL 5114133, at *4 (S.D. Cal. Dec. 13, 2024), and *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023), are similarly distinguishable as involving CIPA § 631(a) claims and lacking the details Nguyen alleges here. *See also Pemberton v. Restaurant Brands Int'l, Inc.*, 2025 WL 3268404, at *4 (N.D. Cal. Nov. 24, 2025) (distinguishing *Mikulsky*). And in *Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *4-5 (C.D. Cal. July 12, 2024), unlike here, the plaintiff did not even allege “her routing information was collected,” nor did she allege “Defendant’s collection of her anonymous information from visiting the Website [could] be associated with her and identify her.” *See also R.C.*, 2025 WL 948060, at *4 (distinguishing *Hughes*).

Defendant also cites *Rodriguez v. Culligan Int’l Co.*, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025), but that case is a procedural mess and of limited persuasive value. On the one hand, the plaintiff was a “tester” (*id.*, at *1), meaning the plaintiff “visited and entered information into Defendant’s website expecting the information to be accessed, recorded, and disclosed.” *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025) (discussing same

plaintiff). On the other hand, the defendant "removed the action to" federal court (*Culligan Int'l*, 2025 WL 3064113, at *1), thereby asserting there was federal jurisdiction over this case, including Article III standing. *Jones v. Ford Motor Co.*, 85 F.4th 570, 573 (9th Cir. 2023) ("Upon removal, the burden to demonstrate Article III jurisdiction shifts to the Defendant as the party invoking federal jurisdiction.") (cleaned up). Thus, *Culligan* involved a plaintiff who could not have standing in a privacy case by virtue of being a "tester," and a defendant who nonetheless asserted there was standing by removing the case to federal court. *Rodriguez v. Brushfire Records*, 2025 WL 3692144, at *1 (C.D. Cal. Dec. 15, 2025), involved the same "tester" plaintiff as *Culligan*, and the case was also removed to federal court. Thus, the standing analysis in that case is equally unavailing. In any event, unlike here, the plaintiff in *Brushfire Records* did not allege "what of plaintiff's personal information, beyond her IP address, was collected by defendant." *Id.*, at *7. The same is true of *Rodriguez v. Fountain9, Inc.*, 2024 WL 3886811, at *2, *4 (Los Angeles Super. Ct. July 9, 2024), which involved both the same "tester" plaintiff and only the collection of an IP address.[3]

In *Mitchener v. CuriosityStream, Inc.*, --- F. Supp. 3d ---, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025), unlike here, the plaintiff did not "allege[] a privacy invasion based on the creation of a detailed profile and his reduced capacity to remain anonymous." *Deivaprakash*, 798 F. Supp. 3d at 1107 (distinguishing *Mitchener*); *see also* Argument §§ I.A, I.C, *supra*. Similarly, *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *2 (N.D. Cal. Oct. 2, 2025), concerned the disclosure of various types of information like "geolocation data, device type, browser type, and 'device fingerprints,'" but again without linkage to comprehensive profiles that were sold to advertisers. And in *Wooten v. Biolife Plasma Servs. L.P.*, --- F. Supp. 3d ---, 2025 WL 2979619 (E.D. Cal. Oct. 22, 2025), the court found no standing because the plaintiffs alleged only that "the third-party trackers have the *capability* to use these pieces of information to engage in ID bridging, which could then result in targeted advertising." *Id.* at *4 (emphasis in original). By contrast, Plaintiff here alleges the Third Parties *do in fact* use the information they record from Website visitors to match users to

[3] *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023), which Defendant also cites, not only involved another "tester" plaintiff, but one who never even used the chat function at issue there. *See id.*, at *1-2. *Byars* is thus about as far a cry from Nguyen's allegations as possible.

comprehensive profiles that are disseminated to advertisers to generate revenue for Defendant, and that he was subject to those practices. *See*, *e.g.*, FAC ¶¶ 49-52, 73, 78, 80, 82, 88, 91-92, 95, 112, 114, 117, 139-141, 165, 180-183, 186, 190. The other cases Defendant cites regarding the collection of various identifiers alone are distinguishable for this reason as well. MTD at 8:4-13 (citing *Ji v. Naver Corp.*, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034 (N.D. Cal. 2022)).

In *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182 (N.D. Cal. 2020), the plaintiffs "allege[d] only that Facebook collected plaintiffs' IP addresses and even then, *only when they were using the Facebook app or were visiting Facebook's website*." *Id.* at 1188 (emphasis added). Thus, unlike here, the plaintiffs alleged they "provided their IP addresses directly to Facebook," akin to a user's IP address being provided to a website operator. *Drummer*, 2025 WL 3190656, at *3 (distinguishing *Heeger*). Here, however, Nguyen's claim is based on the collection of his information by *Third Parties*—as caused by Defendant—"for profiling and advertising purposes," and not to Defendant itself "as part of an ordinary online exchange." *Fregosa I*, 2025 WL 2886399, at *7.

In *Xu v. Reuters News & Media Inc.*, 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025), and *Gabrielli v. Insider, Inc.*, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025), the plaintiffs alleged only the collection of their IP addresses with vague allegations about how the collected information could identify users. But when the *Xu* plaintiff refiled his case in state court with similarly detailed allegations to those here, the court had no trouble finding standing. *Xu*, 2025 WL 3035016, at *3 ("Plaintiff alleges that the collected information was used to build a profile for users based on their information, interests, and interferences. Therefore, whether Plaintiff has a reasonable expectation of privacy to the collected information does not preclude him from alleging an invasion of privacy injury.") (cleaned up). Likewise, when a different plaintiff brought allegations against Insider that were similar to those here, Insider (represented by the same counsel as in the *Gabrielli* matter) removed the action to federal court. *See Pflaumer v. Insider, Inc.*, Case No, 5:25-cv-7481, ECF No.

1 (N.D. Cal. Sept. 4, 2025). Thus, Insider has asserted that allegations like Nguyen's are sufficient for Article III standing. *See Jones*, 85 F.4th at 573.[4]

Defendant cites *Bradshaw v. Lowe's Cos., Inc.*, 2025 WL 3171740 (S.D. Cal. Nov. 12, 2025), but unlike here, the plaintiffs' claim there was "limited to the capture of their IP addresses," and they did not show that "other PII, specifically, the user's MUID, device information, and browser information, constitutes dialing, routing, addressing, or signaling information." *Id.*, at *4-5 (cleaned up). Nguyen's claim here, by contrast, is not so limited, and courts have regularly found the other information recorded here falls within the ambit of CIPA § 638.50(b). *See, e.g.*, *Fregosa I*, 2025 WL 2886399, at *5 ("Device 'fingerprints' likewise serve as unique identifiers across websites and browsing sessions."); *Camplisson*, 2025 WL 3228949, at *1 ("pen register" alleged where trackers recorded "IP address … unique identifiers … device details … and browser information"); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 930 (C.D. Cal. 2025) (same where "the software collects not just IP addresses, but also operating system information [and] browser information"); *Wright v. TrueCare Property Holdings, LLC*, 2025 WL 3248749, at *4 (S.D. Cal. Nov. 21, 2025) ("Data capable of being associated with a user's identity falls within the statutory definition of addressing information."); *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1102, 1109 (9th Cir. 2014) (noting the "refer[r]er header that provided both the user's Facebook ID" constitutes "basic identification and address information").

Last, Defendant cites to *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008), for the general proposition that, under the Fourth Amendment, "e-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit." Of course, Nguyen's claim here is about the disclosure of *his IP address* and other information to the Third Parties—not of the "the websites [he] visit[ed]" (MTD at 7:9 (cleaned up))—and expands into the use of that information for profiling and advertising. In any event, the "CIPA provides protection beyond the floor set by the Fourth Amendment." *Lesh v. Cable News*

[4] *Gabrielli v. Insider* has also been criticized by California courts as potentially lacking "familiar[ity] with substantive California law." *Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229, at *10 n.4 (N.D. Cal. Oct. 16, 2025).

*Network, Inc.*, 767 F. Supp. 3d 33, 39 (S.D.N.Y. 2025). Indeed, the entire point of the pen register statute is to protect from disclosure the types of information that were collected here.

To be clear though, Nguyen is not couching his standing on the California Legislature's enactment of the CIPA. The disclosure and use of Nguyen's information here is still analogous to common law and historical harms. Argument § I.A, *supra*. But the California Legislature may "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (cleaned up); *see also Pileggi v. Washington Newspaper Publishing Co.*, 146 F.4th 1219, 1227 (D.C. Cir. 2025) ("So long as Congress alters the degree of harm and not the kind of harm, congressional action can make an injury concrete.").

## II. NGUYEN HAS SUFFICIENTLY PLED A CIPA § 638.51 CLAIM UNDER THE PREVAILING LAW

### A. The Trackers Recorded Nguyen's "Routing, Addressing, Or Signaling Information" Transmitted By His Computer

Defendant argues that the Trackers are not "pen registers" because they "do[] not involve the recording of outgoing data." MTD at 11:12-13. On the contrary, Nguyen has alleged outgoing information—his IP address, Device Metadata, and unique user identifiers—transmitted from his computer via an HTTP request, just as the statute requires. *See, e.g.*, FAC ¶¶ 2, 6, 27, 58, 60, 65-70, 99, 105, 107-109, 121, 126, 139, 186; *see also* Cal. Pen. Code § 638.50(b) (defining a "pen register," in relevant part, as "a device or process that records or decodes … information *transmitted by* an instrument or facility *from which* a wire or electronic communication is transmitted") (emphasis added); *Fandom*, 754 F. Supp. 3d at 930 (trackers were pen registers where they recorded "addressing information transmitted by the user's computer … in connection with the outgoing HTTP request to [the defendant's] website").

Regardless, courts have rejected Defendant's argument that a "pen register" "must record outgoing data, such as the numbers dialed on a telephone." MTD at 11:9 (cleaned up). For instance, the *Fandom* court addressed Defendant's exact argument here: that the trackers were not "pen registers" because they did "not collect any '*recipient* "dialing, routing, addressing or signaling information" relating to an outgoing communication,' but instead collect the *sender's* IP address."

*Fandom*, 754 F. Supp. 3d at 929 (emphasis in original). The *Fandom* court rejected this argument because "[n]othing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Id.* And because the statutory definition "is clear," the analysis "must end there." *Id.* Thus, *Fandom* found that web trackers are "pen registers" if they "record addressing information transmitted by the user's computer … in connection with the outgoing HTTP request to [a] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Id.* Similarly, in *Fregosa I*, the court analyzed the exact same argument. *See Fregosa I*, 2025 WL 2886399, at *6 (noting "the process at issue … is the reversal of a typical pen register situation, since the website trackers capture incoming data, rather than outgoing data"). The court rejected this argument because "[t]he definition [of a pen register] is technology-neutral, not confined to legacy telephone equipment, and *not particularly sensitive to the semantic distinction that [the defendant] seeks to draw*." *Id.* (emphasis added). Indeed, the *Fregosa I* court stated that federal courts have "widely recognized that trackers capturing IP addresses and related metadata fall comfortably within the definition of a 'pen register.'" *Id.* (citing *Fandom*, 754 F. Supp. 3d at 931).

Every other federal court to address this issue is in accord. *See*, *e.g.*, *Harris*, 2026 WL 247875, at *2 (rejecting argument that "the trackers are not pen registers because they only collect information about the source of communications made to the Website (*i.e.*, [the plaintiff's] device), rather than the outgoing … information sent from that source") (cleaned up); *Krzyzek*, 2026 WL 206855, at *9 (rejecting argument that a "pixel is not a pen register because it records a user's own information, and is therefore not akin to the numbers dialed on a telephone"); *Semien*, 2026 WL 216333, at *10 (rejecting argument that a "pixel is not a pen register because it records *incoming* information from users' web activity not *outgoing* information") (emphasis in original); *Nelson v. Reddit, Inc.*, 2026 WL 445627, at *4 (S.D. Cal. Feb. 17, 2026) ("The Court is not persuaded that the definition of pen register requires the collection of only outgoing data."); *Doe v. Talkiatry Management Servs., LLC*, 2025 WL 3190813, at *7 (C.D. Cal. Oct. 1, 2025) (rejecting argument that "Meta Pixel's tracking Plaintiff's own device's information falls outside the ambit of § 638.51").

Defendant's reliance on *Rodriguez v. Plivo Inc.*, 2024 WL 5184413 (Los Angeles Super. Ct. Oct. 2, 2024), and *Aviles v. LiveRamp, Inc.*, 2025 WL 487196 (Los Angeles Super. Ct. Jan. 28, 2025), is unpersuasive. Neither decision "engage[d] in [an] extended interpretation of the statutory terms, [and] instead drew analogies based on a pen register's traditional functionality and relied on the legislative history." *Shah v. Fandom, Inc.*, 2024 WL 6903081, at *2 (N.D. Cal. Dec. 16, 2024) (declining to follow *Plivo*); *Garon v. Keleops USA, Inc.*, 2025 WL 2522374, at *5 (N.D. Cal. Sept. 2, 2025) (declining to follow *Aviles* as "based on an analysis of CIPA's legislative history" rather than "the plain statutory language"). And as both the U.S. and California Supreme Courts have held, "the text of a law controls over purported legislative intentions unmoored from any statutory text," and "the Court may not replace the actual text with speculation as to Congress' intent." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 815 (2024); *Prang v. Los Angeles County Assessment Appeals Board*, 15 Cal. 5th 1152, 1180 (2024) ("Where statutory text is unambiguous and provides a clear answer, courts need go no further.").

**B. Defendant's "Downstream" Use Argument Misses The Mark**

Defendant attempts to brush off many of the allegations in the FAC simply by arguing Nguyen's "allegations concerning downstream use of the data are irrelevant." MTD at 12:5. It is unclear what Defendant means by this.

As an initial matter, the CIPA makes actionable the installation "or *use* [of] a pen register" without consent or a court order. Cal. Pen. Code § 638.51(a). As Nguyen alleges here, Defendant "deliberately embedded third-party trackers on its website, knew that those trackers would capture visitors' IP addresses and device metadata, and used the resulting data in concert with [the Third Parties] to facilitate targeted advertising." *Fregosa I*, 2025 WL 2886399, at *8; *see also* Argument § I.A, *supra*. Defendant's "active role is enough to plead 'use' under § 638.51." *Fregosa I*, 2025 WL 2886399, at *8; *see also*, *e.g.*, *Nelson*, 2026 WL 445627, at *6 ("Plaintiff's theory turns on Defendant's own conduct, not the conduct of LiveRamp."); *Xu*, 2025 WL 3035016, at *3 ("Defendant argues that the conduct of Third Parties is not relevant to Plaintiff's claim against it. However, it appears Defendant does not account for Plaintiff's allegation that it was responsible for the installation of the Trackers.") (cleaned up); *Deivaprakash*, 798 F. Supp. 3d at 1107 ("Condé also

argues that it did not cause any privacy injury allegedly suffered by Deivaprakash … Condé ignores, however, that, as alleged by Deivaprakash, it enabled the third parties to amass information about Deivaprakash by embedding the code in its websites that surreptitiously installed the trackers on Deivaprakash's browser in the first place."). *Aviles*—which found that "downstream use of data is not a part of the definitions of pen registers"—did not base its conclusion on any statutory text or the cause of action section in CIPA § 638.51. *Aviles*, 2025 WL 487196, at *3.

Moreover, as noted above, the harm that befell Nguyen here—the linkage to non-anonymous profiles and the continued building of the same, which were then sold to unlimited numbers of advertisers—occurred directly on Defendant's Website. *See*, *e.g.*, *id.* ¶¶ 65, 73, 82, 94, 105, 112, 188-190; *see also* Argument § I.A, *supra*. Indeed, Nguyen alleges the Third Parties directly recorded his information from the Website and synchronized that information with data broker profiles of Nguyen on the Website. *Id.* Thus, Defendant's conduct and its consequences were not "downstream," but instead occurred directly on the Website.

### C. IP Addresses, Device Metadata, And Unique User Identifiers Are "Routing, Addressing, And Signaling Information"

Defendant argues that "courts have held that a claim under § 638.51 is actionable only if the claimant has a cognizable privacy interest in the information claimed to be intercepted." MTD at 12:12-13. Defendant's argument conflates whether Nguyen has alleged a violation of CIPA § 638.51 with whether Nguyen has standing to pursue that claim—which Nguyen does for the reasons set forth above and below. *See* Argument § I, *supra*; Argument § III, *infra*.

As to whether Nguyen can state a claim based on the Third Parties' collection of his IP address, Device Metadata, and unique user identifiers, Cal. Pen. Code § 638.51(a) makes actionable the installation or use of a "pen register" without consent or a court order. A "pen register," in turn, is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Courts have overwhelmingly held that an IP address is such "routing, addressing, or signaling information." *See*, *e.g.*, *Fregosa I*, 2025 WL 2886399, at *5 ("An IP address, like a telephone number, is quintessential 'addressing' information

transmitted by the user's computer or smartphone in connection with an outgoing HTTP request to [a] website: it identifies the device sending the communication and determines where the packet is to be routed."); *Drummer*, 2025 WL 3190656, at *4 ("IP addresses would appear to fall, at the very least, in the 'addressing' category"); *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) ("IP addresses constitute addressing information and do not necessarily reveal any more about the underlying contents of the communication"). The same is true of Device Metadata and user identifiers per the authorities Nguyen cites above. Argument § I.D, *supra* (citing *Fregosa I*, 2025 WL 2886399, at *5; *Camplisson*, 2025 WL 3228949, at *1; *Autotrader.com*, 762 F. Supp. 3d at 930; and *Wright*, 2025 WL 3248749, at *4). So, the Trackers are at least a "process" that records these pieces of "addressing information" from the "communication transmitted from the user's computer or smartphone to [Defendant's] website," and are thus "pen registers." *Fandom*, 754 F. Supp. 3d at 928. And because Defendant installed and used these Trackers without consent or a court order, Nguyen has alleged Defendant violated CIPA § 638.51(a).

Defendant argues that because Nguyen's IP address, Device Metadata, and unique user identifiers cannot be used to identify him, he "cannot be said to state an actionable CIPA claim." MTD at 13:22. Whether this information can be used to identify Nguyen (it can, for the reasons Nguyen lays out in the FAC) is at best relevant to whether Nguyen suffered a concrete injury for purposes of Article III—something Nguyen has established he has per the above. Argument §§ I.A-I.B, *supra*. But that question is irrelevant to whether the information itself is covered by the purview of the CIPA.

Likewise, Defendant argues that "Plaintiff voluntarily provided his IP address and therefore had no expectation of privacy in it." MTD at 13:1-2. "This framing mischaracterizes the [F]AC":

> [Nguyen] does not allege that [Defendant] violated CIPA simply by receiving IP addresses as part of an ordinary online exchange. Rather, the [F]AC alleges that [Defendant] affirmatively embedded third-party trackers that recorded and transmitted users' identifying information to outside entities for profiling and advertising purposes

*Fregosa I*, 2025 WL 2886399, at *7; *Nelson*, 2026 WL 445627, at *5 (same). In other words, Nguyen brings claims based on the collection of his information by the *Third Parties*—whose Trackers

Defendant installed and used—rather than Defendant's own collection as the website operator. And Nguyen did not "voluntarily" provide his information to third party data brokers and data sellers. *See*, *e.g.*, *Fregosa I*, 2025 WL 2886399, at *7 ("Courts have rejected similar attempts to dismiss complaints when the allegations involved transmission of data to third parties."); *Drummer*, 2025 WL 3190656, at *4 ("It is the *further* retention and transmission of their IP addresses that concerns Plaintiffs.") (emphasis in original); *Fandom*, 754 F. Supp. 3d at 932 ("A user who consents to disclose their IP address to Fandom as part of accessing its website does not necessarily consent to disclose their IP address to the third parties operating the Trackers."). Nor has or can Defendant show that Nguyen consented to the collection of his IP address and other information by the Third Parties, as is Defendant's burden, and Plaintiff alleges he and other users did not consent. *See, e.g.*, FAC ¶¶ 3, 5, 61, 144, 168-69, 191-92, 216; *see also Fandom*, 754 F. Supp. 3d at 931 ("Fandom, however, bears the burden to establish consent and, on a motion to dismiss, would be required to show that the allegations of the complaint established consent as a matter of law.").[5]

## III. NGUYEN HAS STATUTORY STANDING

Defendant argues Nguyen's "claim falls outside the zone of interest protected by the CIPA statute because individuals do not have a legally protected interest in information that is allegedly transmitted as part of the normal operation of the internet." MTD at 13:25-27. It appears Defendant is challenging Nguyen's statutory standing to sue. To the extent that is Defendant's argument, it should be rejected for the same reasons as Nguyen has Article III standing and an actionable CIPA § 638.51 claim. *See* Argument §§ I, II.C, *supra*.

However, several fallacies in Defendant's argument are worth pointing out. Cal. Pen. Code § 637.2(a)(1) permits "[a]ny person who has been injured by a violation of this chapter [to] bring an action against the person who committed the violation" for "[f]ive thousand dollars ($5,000)." This includes CIPA § 638.51. *See Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *4 (N.D. Cal. Jan. 6, 2026); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1078 (C.D. Cal. 2024) ("§ 637.2

[5] Defendant again cites to *Insider* for the proposition that an IP address "cannot identify an individual user." MTD at 13:3-4 (quoting *Insider*, 2025 WL 522515, at *5). Nguyen has already distinguished *Insider* as not involving the collection of information beyond an IP address and not including allegations related to matching users to profiles held by data brokers, unlike Nguyen's allegations here. Argument § I.D, *supra*.

expressly states that all CIPA violations, including § 638.51, confer a private right of action. Defendant offers no convincing authority to suggest that this § 637.2 is per se invalid or that it does not apply to § 638.51."). However, "[i]t is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." Cal. Pen. Code § 637.2(c).

Thus, as far as statutory standing is concerned, "[i]f [Defendant's] alleged conduct constitutes the unconsented installation of [] a pen register [it does] … then one instance provides a basis for seeking the statutory $5,000 penalty and *no further injury need be proved*." *Scarlett v. Future US, LLC*, 2025 WL 2614587, at *3 (San Francisco Super. Ct. Sept. 5, 2025); *see also Kashanian v. Nat'l Enterprise Sys., Inc.*, 114 Cal. App. 5th 1037, 1045 (2025) ("Because a debt collector's violation of the Rosenthal Act makes them liable for statutory damages—regardless of whether there were actual damages—we conclude a statutory violation is sufficient to confer standing upon a consumer."); *Yeh v. Barrington Pacific, LLC*, --- Cal. Rptr. 3d ---, 2026 WL 161299, at *4 (Ct. App. Jan. 21, 2026) ("Courts have determined that some statutory schemes confer standing absent a showing of concrete injury by authorizing recovery of civil penalties or statutory damages … even in the absence of actual injury to a plaintiff."); *Chai v. Velocity Investments, LLC*, 108 Cal. App. 5th 1030, 1040 (2025) ("Velocity supplies no reason why this state's Legislature cannot create a statutory right, deem a violation of that right an injury sufficient to confer standing—independent of actual damages—and provide a modest monetary award as a remedy … for those motivated to pursue it."). There is no requirement that Nguyen must show his claim falls within "the zone of interest protected by the CIPA." MTD at 13:25.

Regardless, Nguyen has done so. "In determining statutory standing under CIPA, courts have held IP address collection for targeted advertisement, creates a concrete injury-in-fact." *R.C.*, 2025 WL 948060, at *3 (collecting cases); *see also*, *e.g.*, *Fandom*, 754 F. Supp. 3d at 932 (finding statutory standing based on collection of IP addresses); *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 39-40 (S.D.N.Y. 2025) (same as noting the plaintiff's allegations "plausibly suggest that [she] did not expect the disclosure of this information to third parties, placing the conduct alleged within the scope of CIPA"). The same is true of device information and other user identifiers. *See*, *e.g.*,

*Moody*, 742 F. Supp. 3d at 1077-1078 (statutory standing based on collection of "browser and device data" by third party tracker); *Heiting*, 2025 WL 1430663, at *2 (same based on collection of "device and browser information, … referral tracking, and URL tracking") (cleaned up). And as noted above, these pieces of information are "routing, addressing, or signaling information" covered by the CIPA. Cal. Pen. Code § 638.50(b).

Defendant also claims Nguyen is challenging "the process by which all websites communicate with all users who choose to access them." MTD at 14:25-26. "This framing mischaracterizes the [F]AC" for the reasons laid out above. *Fregosa I*, 2025 WL 2886399, at *7; *see also* Argument § II.C, *supra*. Again, Nguyen's claim is about the collection of his information by the *Third Parties*—whose Trackers Defendant installed and used—rather than Defendant's own collection as the website operator. This further disclosure and use of Nguyen's information has nothing to do with "basic internet function[ality]." *Drummer*, 2025 WL 3190656, at *4. Defendant's concerns are thus misplaced and "overstated." *Fregosa II*, 2026 WL 183857, at *2; *Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *13 (C.D. Cal. Dec. 4, 2025) ("Defendant's prophecy has not come to fruition … since other courts have interpreted CIPA as this Court does.").

With this perspective in mind, Defendant's authorities can easily be set aside. *Capitol Recs. Inc. v. Thomas-Rasset*, 2009 WL 1664468 (D. Minn. June 11, 2009), and *Malibu Media, LLC v. Pontello*, 2013 WL 12180709 (E.D. Mich. Nov. 19, 2013), unlike here, "involve[d] situations where users were directly communicating with the party alleged to be operating the pen register and voluntarily sent that party their IP address." *Fandom*, 754 F. Supp. 3d at 932 n.3. *Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370 (Los Angeles Super. Ct. Sep. 9, 2024), concerned "first-party, IP-address-only cookies," rather than "Analytics Cookies" and "Advertising Cookies" like those set by the Trackers here. *Walsh*, 2025 WL 2939229, at *18 (distinguishing *Casillas*). Indeed, in *Casillas*, 2024 WL 4873370, at *4, the plaintiff's claim was based on the collection of her IP address by the defendant, the website operator. Similarly, in *Licea v. Hickory Farms LLC,* 2024 WL 1698147, at *4 (Los Angeles Super. Ct. Mar. 13, 2024), the plaintiff appeared to allege he "provid[ed] an IP address for purposes of connecting the website" (*i.e.*, the website, not a third party, collected his IP address). And both *Casillas* and *Licea* "appear[ed] to be based on far less

comprehensive complaints than those submitted by Plaintiff[]." *Drummer*, 2025 WL 3190656, at *4 n.1; *Scarlett*, 2025 WL 2614587, at *1 ("The court is unable to compare the adequacy of the allegations in the complaints as to which demurrers were sustained with the detailed FAC.").

Last, Defendant claims *Greenley* (one of many decisions Nguyen cites) was based on "more sticky and persistent" information and addressed "a data broker … rather than, as here, the operator of a website." MTD at 15:15-16:4. Of course, Nguyen alleges the Trackers are operated by one registered data broker and a data seller who matched Nguyen's information to profiles held by data brokers. *See*, *e.g.*, FAC ¶¶ 62, 82, 95, 101. And whether certain information is "more sticky and persistent" than others is a question of fact. But it is hard to see more permanence than a comprehensive profile that Nguyen and others can be matched up to "over multiple visits and across the Internet" through the collection of their IP addresses, Device Metadata, and unique user identifiers. FAC ¶ 27; *see also*, *e.g.*, *id.* ¶¶ 49, 52, 58, 68, 109, 139, 142, 165, 167, 186. Indeed, California recognizes IP addresses as "personal information" because they are "reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household." Cal. Civ. Code § 1798.140(v)(1)(A).

**IV. DEFENDANT'S RULE OF LENITY ARGUMENT FAILS**

Defendant asserts that "Section 638.51's interpretation is subject to the rule of lenity." MTD at 16:13-14. But "[t]he rule of the common law, that penal statutes are to be strictly construed, has no application to this Code." Cal. Pen. Code § 4. Thus, it is unclear whether this rule applies at all.

Regardless, the rule of lenity only applies "when two reasonable interpretations of the same provision stand in relative equipoise," not "every time there are two or more reasonable interpretations of a penal statute." *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202 (2021) (cleaned up); *see also Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (noting the rule of lenity only applies "when a criminal statute contains a grievous ambiguity or uncertainty") (cleaned up). And here, the CIPA: "contains no grievous ambiguity: its language, structure, history, and purpose are sufficiently clear, and … the statutory text is deliberately expansive, *designed to encompass new technologies and apply to conduct like that alleged here*." *Fregosa I*, 2025 WL 2886399, at *9 (emphasis added). Quite the contrary, "the California Supreme Court has instructed courts to interpret CIPA in the

manner that 'fulfills the legislative purpose of CIPA by giving greater protection to privacy interests.'" *Matera v. Google Inc.*, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016) (Koh, J.) (quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002)). And "when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection." *Matera*, 2016 WL 8200619, at *19; *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d at 1153 (construing CIPA in more privacy-protective manner when faced with "ambiguous" language).

Thus, the California Supreme Court has rejected the rule of lenity's application to disputed provisions of the CIPA. *See LoanMe*, 11 Cal. 5th at 202 (declining to apply rule of lenity to CIPA § 632.7). And courts have overwhelmingly rejected the rule of lenity's application to CIPA §§ 638.50-638.51. *See*, *e.g.*, *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1094 (N.D. Cal. 2025) ("LiveRamp … has not established [] any 'grievous ambiguity' in the statute's express language."); *Deivaprakash*, 798 F. Supp. 3d at 1108 ("[T]he application of the CIPA to the allegations … does not require the interpretation of any ambiguities in the statute…"); *Garon*, 2025 WL 2522374, at *6 ("Keleops has not identified any "grievous ambiguity or uncertainty in CIPA.") (cleaned up); *Lewis*, 2025 WL 3687546, at *13 (finding "no ambiguity regarding the application of § 638.50 to these facts"); *Nelson*, 2026 WL 445627, at *6 ("The Court again follows other courts addressing similar arguments and finds that there is no ambiguity regarding the application of §§ 638.50 and 638.51 to these facts."); *Xu*, 2025 WL 3035016, at *5 ("The rule of lenity does not apply here because Defendant has not identified any 'egregious ambiguity' in the express language of Section 638.51.").

Defendant's authorities and arguments are unpersuasive. In *Doe v. Eating Recovery Ctr. LLC*, --- F. Supp. 3d ---, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025)—which was a summary judgment order—the court evaluated CIPA § 631, not CIPA §§ 638.50-638.51. Regardless, *Eating Recovery* appears in tension with the *LoanMe* and the preliminary provisions of the Penal Code. As to *Sanchez v. Cars.com Inc.*, 2025 WL 487194 (Los Angeles Super. Ct. Jan. 27, 2025), that decision did *not* invoke the rule of lenity. Instead, *Sanchez* improperly "focused its analysis on the legislative history of the CIPA rather than on the expansive, plain language of Section 638.50." *Riganian*, 791

F. Supp. 3d at 1094. And of course, under U.S. and California Supreme Court precedent, that is improper. *Lewis*, 2025 WL 3687546, at *13 ("Based on accepted methods of statutory interpretation in this state and federally, this Court cannot parrot Defendant's flawed methodology.") (cleaned up).

Defendant attempts to create ambiguity in the CIPA, claiming "the California Legislature adopted the same authorization provision in CIPA section 638.52 that courts have relied on under the federal Pen Register Act to find that the Act applied only to mechanical, telephone number-tracing technology." MTD at 17:8-11. Defendant ignores that the California Legislature also adopted the definition in the modern Federal Pen Register Act (18 U.S.C. § 3127(3)), which courts have understood for decades to apply to internet communications. *See*, *e.g.*, *In re Application of U.S. for an Order Authorizing Use of A Pen Register and Trap On (XXX) Internet Service Account/User Name [xxxxxxxx@xxx.com]*, 396 F. Supp. 2d 45, 47 (D. Mass. 2005) ("There can be no doubt that the expanded definition of a pen register, especially the use of the term 'device or *process'*, encompasses e-mail communications and communications over the internet.") (emphasis in original); *United States v. Soybel*, 13 F.4th 584, 586-587 (7th Cir. 2021) (pen register installed under federal statute "to monitor internet traffic in and out of the building generally and Soybel's unit specifically"). In choosing this broad definition, the California Legislature made a deliberate choice to have the CIPA's pen register provision apply to internet communications. Had the Legislature intended for CIPA §§ 638.50-638.51 to apply only to telephonic communications, it could have done so, "as evidenced by other sections of CIPA where they imposed such limitations." *Motorola Mobility*, 2025 WL 1939957, at *12 (citing Cal. Pen. Code §§ 631(a)[i], 632.7).

By contrast, courts have found that "Section 638.52 … merely lists requirements relating to a particular type of pen register: one that is installed on a telephone line … But that does not alter the statutory definition of a pen register stated in § 638.50(b)." *Fandom*, 754 F. Supp. 3d at 930; *Walsh*, 2025 WL 2939229, at *18 ("[T]he Court agrees with the [*Fandom*] court's opinion reconciling these sections."); *see also*, *e.g.*, *Drummer*, 2025 WL 3190656, at *5 n.2 ("Section 638.52 perhaps does not apply to pen registers that collect IP addresses and only to pen registers that collect telephone information, which further undermines any authority Section 638.52 would have in invalidating Plaintiffs' allegations."); *Moody*, 742 F. Supp. 3d at 1076 ("Though § 638.52 refers to

pen registers and trap and trace devices as physically attached to telephone lines, the definitions set forth under § 638.50 do not state any such requirement.”). Indeed, as this Court has twice found:

> this limited textual provision suggesting that pen registers generally involve telephones *cannot trump the express statutory definition of pen register*, which is not so limited. To the contrary, a fair reading of Section 638.52(d) would allow an officer seeking a judicial order for an online pen register to provide the equivalent of a “number” for the online device. The broader, more capacious definition of Section 638.50 applies to more devices than the later statutory sections might envision.

*MyFitnessPal*, 2026 WL 216334, at *8 (emphasis added); *Wiley*, 2025 WL 3654085, at *8 (same).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant’s Motion. If the Court grants the Motion in any respect, Nguyen respectfully requests leave to amend. *See Roney v. Miller*, 705 F. App’x 670, 671 (9th Cir. 2017).

Dated: February 19, 2026

Respectfully submitted,

By: /s/ Kaili C. Lynn
Kaili C. Lynn

**BURSOR & FISHER, P.A.**
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: klynn@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main St., Ste. 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (State Bar No. 363482)
Victoria X. Zhou (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com
vzhou@bursor.com

*Attorneys for Plaintiff*