Tammy B. Webb (SBN 227593)
tbwebb@shb.com
Matthew G. Ball (SBN 208881)
mgball@shb.com
Aubrey Kramer (SBN 359426)
akramer@shb.com
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900 | Fax: (415) 391-0281

Attorneys for Defendant
MACYS.COM, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THU NGUYEN, individually and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MACYS.COM, LLC,<br><br>Defendant. | Case No. 5:25-cv-07096-PCP<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date: April 23, 2026<br>Time: 10:00 a.m.<br>Judge: Hon. P. Casey Pitts<br>Courtroom: 8 |

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................................ 1

ARGUMENT ........................................................ 1

I. PLAINTIFF FAILS TO ESTABLISH ARTICLE III STANDING ........................................................ 1

A. This Court's Prior Decisions Do Not Support Article III Standing Here. ........................................................ 1

B. Plaintiff Conflates The Standing Analysis. ........................................................ 2

C. Plaintiff Did Not Suffer A Cognizable Injury ........................................................ 3

1. Plaintiff Fails To Sufficiently Allege An Intrusion Upon Seclusion. ........................................................ 3

2. Plaintiff's Loss of Control Theory Is Not Actionable. ........................................................ 6

D. Plaintiff's Unjust Enrichment Theory Does Not Create Article III Standing. ........................................................ 7

II. PLAINTIFF FAILS TO ALLEGE A CIPA 638.51 VIOLATION ........................................................ 8

A. The Microsoft And Taboola Technologies Are Not Pen Registers. ........................................................ 8

B. Plaintiff Has No Expectation Of Privacy In The Data Allegedly Collected ........................................................ 10

III. PLAINTIFF DOES NOT HAVE STATUTORY STANDING ........................................................ 11

IV. THE RULE OF LENITY IS APPLICABLE TO CIPA SECTION 638.51 ........................................................ 12

CONCLUSION ........................................................ 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aviles v. Liveramp, Inc.*,
2025 WL 487196 (Cal. Super. Jan. 28, 2025) ....9

*Blalock v. EquipmentShare.com Inc.*,
2026 WL 330067 (Cal. Super. Jan. 27, 2026) ....9

*Cammorata v. Sonifi Solutions, Inc.*,
2026 WL 500856 (Cal. Super. Feb. 18, 2026)....9

*Carpenter v. United States*,
585 U.S. 296 (2018)....10

*Dawidzik v. Tesla, Inc.*,
No. EDCV 25-01982-KK-SP3786963 (C.D. Cal. Dec. 29, 2025) ....3

*Deivaprakash v. Conde Nast Digital*,
798 F. Supp. 3d 1100 (N.D. Cal. 2025) ....2

*Deivaprakash v. Conde Nast Digital*,
No. 3:25-cv-04021-RFL (Feb. 25, 2026)....10

*DellaSala v. Sama TV, Inc.*,
2025 WL 3034069 (N. D. Cal. Oct. 30, 2025)....5

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ....9

*Drummer v. Costar Group, Inc.*,
2025 WL 3190656 (C.D. Cal. Oct. 22, 2025)....8

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....4

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025)....4

*///*

*Fregosa v. Mashable, Inc.*,
No. 25-cv-1094-CRB (Feb. 19, 2026) ....10
*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) ....4, 7
*Gilbert v. 7-Eleven, Inc.*,
157 F.4th 1057 (9th Cir. 2025) ....3
*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ....5, 8
*Hammerling v. Google LLC*,
615 F.Supp.3d 1069 (N.D. Cal. 2022) ....5
*Head v. Wilkie*,
936 F.3d 1007 (9th Cir. 2019) ....3
*Khamooshi v. Politico, LLC*,
2025 WL 2822879 (*Khamooshi II)* ....7
*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ....3, 7, 10, 11
*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ....11
*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....6
*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ....5
*Morgan v. Twitter, Inc.*,
2025 WL 1248821 (9th Cir. Apr. 30, 2025) ....2
*Nayab v. Cap. One Bank (USA), N.A.*,
942 F.3d 480 (9th Cir. 2019) ....3
*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....3, 4, 6

*Price v. Converse, Inc.*,
805 F. Supp. 3d 1102 (C.D. Cal. 2025) ....................5

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025)....................4

*Rodriguez v. Brushfire Recs.*,
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ....................11

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ....................10

*Semien v. PubMatic Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) ....................4

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ....................8

*Shah v. Fandom, Inc.*
754 F. Supp. 3d 924 (N.D. Cal. 2024) ....................9

*Shah v. MyFitnessPal, Inc.*,
2026 WL 216334 (N.D. Cal. Jan. 27, 2026) ....................2, 4

*Smith v. Maryland*,
442 U.S. 735 (1979)....................10

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................3

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)....................3

*TransUnion, LLC v. Ramirez*,
594 U.S. 413 (2021)....................3, 8

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
489 U.S. 749 (1989)....................6

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ....................10, 11

*United States v. Miller*,
425 U.S. 435 (1976)....................10

*Variety Media, LLC v. Super. Ct. of Los Angeles Cty.*
No. B350578 (Cal. Ct. App. Jan. 8, 2026 order to show cause) ....................10

*Wiley v. Universal Music Grp., Inc.*,
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025)....................2

*Wooten v. BioLife Plasma Services L.P.*,
807 F. Supp. 1139 (E.D. Cal. 2025)....................4, 7

**Statutes**

Cal. Penal Code § 630....................11

Cal. Penal Code § 637.2....................11

Cal. Penal Code § 637.2(a) ....................8

Cal. Penal Code § 638.50(b) ....................9, 10

Cal. Penal Code § 638.51.................... *passim*

Cal. Penal Code § 638.51(c) ....................12

Cal. Penal Code § 638.52....................12

Cal. Penal Code § 638.52(c) ....................12

Cal. Penal Code §§ 638.52(d)(1)-(3)....................12

Cal. Penal Code § 638.53....................12

**Other Authorities**

Article III.................... *passim*

## INTRODUCTION

Plaintiff Thu Nguyen's ("Plaintiff") Opposition fails to cure any of the fatal defects identified in Macys.com, LLC's ("Macy's") Motion to Dismiss (Dkt. 36). As set forth in Macy's initial motion and further demonstrated in this Reply, Plaintiff still fails to allege a cognizable injury sufficient to establish standing, nor does he identify *any* loss resulting from Macy's use of ubiquitous technology on www.macys.com (the "Website"). Plaintiff claims three categories of purported "injury": (1) intrusion upon seclusion, (2) "loss of control of his information", and (3) Macy's unjust enrichment. Yet, Plaintiff does not actually assert a cause of action for intrusion upon seclusion or unjust enrichment; instead, he attempts to rely on these theories solely to manufacture Article III standing. That effort is unavailing.

Plaintiff does not identify a *single* instance in which the information allegedly sent to third parties was used to his detriment. Nor does he—nor could he—claim that any of the alleged information is inherently sensitive. Rather, he merely claims that third parties' receipt of his IP address, Device Metadata, and unique user identifiers resulted in a "loss of control" that injured him. But Plaintiff's alleged "loss of control" is not a cognizable injury. Plaintiff likewise fails to establish that any revenue obtained by Macy's was unjust.

In short, Plaintiff has not adequately shown that he has suffered any injury from Macy's conduct, and Plaintiff's claim should be dismissed. Because Plaintiff has already amended the complaint in response to the same arguments raised in Macy's initial motion (Dkt. 24), dismissal should be without leave to amend.

## ARGUMENT

### I. PLAINTIFF FAILS TO ESTABLISH ARTICLE III STANDING.

#### *A. This Court's Prior Decisions Do Not Support Article III Standing Here.*

Plaintiff's Opposition first argues that that this Court "has found that violations of CIPA § 638.51 can cause a concrete injury sufficient for Article III standing (let alone statutory standing)." Opp. at 1. While the Court has recognized that in *some* circumstances such violations may give rise to a concrete injury, this is plainly not one of those cases.

First, *MyFitnessPal* ("MFP") found Article III standing based on defendant's

misrepresentations in its privacy policy. *See Shah v. MyFitnessPal, Inc.*, 2026 WL 216334, at *3 (N.D. Cal. Jan. 27, 2026). Plaintiffs alleged that MFP represented that plaintiffs could opt out of unnecessary cookies and that their individual information would not be shared, and yet MFP shared that information anyway. *Id.* The Court held that this alleged harm was "similar in kind to a harm recognized as actionable at common law." *Id.* at *3 (citing *Morgan v. Twitter, Inc.*, 2025 WL 1248821, at *1-2 (9th Cir. Apr. 30, 2025).

Similarly, in *Wiley*, the Court held that the plaintiffs had a reasonable expectation of privacy because Wiley's privacy policy assured plaintiffs they could opt out of cookies, but plaintiffs alleged that the cookies were still placed even after they "declin[ed] all." *Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *10-12 (N.D. Cal. Dec. 17, 2025). As the Court explained, "[b]ecause UMG told users that they could opt out of such forms of information collection, users of UMG's website had a reasonable expectation of privacy with respect to that information." *Id.* ("D'Angelo and other cases where the website owner did not "set out an expectation that it would not collect" information are therefore inapposite.").

*Wiley* and *MyFitnessPal* are not analogous to the case at hand. Unlike in those cases, no such allegations exist here. Plaintiff identifies no affirmative representations by Macy's, no assurance that Macy's would refrain from the data collection at issue, and critically, no allegation that he ever declined, rejected, or otherwise attempted to withhold consent. Absent a misrepresentation or an express refusal, the factual circumstances in *Wiley* and *MyFitnessPal* are materially distinct and provide no basis for finding Article III standing in this case.

### ***B. Plaintiff Conflates The Standing Analysis.***

Plaintiff contends that his allegations are sufficient to satisfy Article III "because the privacy violation extends beyond the collection of just [Nguyen's] IP address and metadata; it encompasses how that collection allegedly allowed the third parties to: (1) build a profile reflecting his personal information; and (2) interfere with his ability to remain anonymous." Opp. at 2 (citing *Deivaprakash v. Conde Nast Digital*, 798 F. Supp. 3d 1100 (N.D. Cal. 2025)). But *Deivaprakash* does not support that proposition. 798 F. Supp. 3d at 1107. That decision addressed *statutory* standing, *not* Article III standing. *Deivaprakash*, 798 F. Supp. 3d at 1107 ("Condé disputes whether Deivaprakash

satisfies the requirements of **statutory** standing."). The court further cautioned that "Article III standing is different from, and not to be measured by, statutory standing." *Id.* (citing *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1182 n.5 (N.D. Cal. 2025)).

As courts consistently recognize, statutory standing "has nothing to do with whether there is [a] case or controversy under Article III." *See Dawidzik v. Tesla, Inc.*, No. EDCV 25-01982-KK-SP3786963 (C.D. Cal. Dec. 29, 2025) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 (1998)); *see also Gilbert v. 7-Eleven, Inc.*, 157 F.4th 1057, 1064 n.4 (9th Cir. 2025) ("[S]tatutory standing ... should not be confused with constitutional standing under Article III."); *Head v. Wilkie,* 936 F.3d 1007, 1012 n.4 (9th Cir. 2019) ("There is a difference between statutory standing and constitutional standing."). Plaintiff cannot sidestep Article III's requirement of a concrete traditional harm, such as an expectation of privacy, by relying on an inapplicable standing test.

### ***C. Plaintiff Did Not Suffer A Cognizable Injury.***

Plaintiff's standing turns on whether he can "identif[y] a close historical or common-law analogue for their asserted injury." *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 424 (2021). This means "assess[ing] whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). He offers three theories: intrusion upon seclusion, "loss of control of data," and unjust enrichment. But none of his allegations come close to establishing the type of traditionally recognized harm necessary for Article III standing.

#### *1. Plaintiff Fails To Sufficiently Allege An Intrusion Upon Seclusion.*

Plaintiff argues his injury is "at least analogous to the tort of intrusion upon seclusion." Opp. at 3. Under *Popa*, intrusion upon seclusion is one of the four actionable privacy torts recognized at common law. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025). An intrusion upon seclusion occurs where there is (1) "an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns," (2) "of a kind that would be highly offensive to a reasonable man," *Popa*, 153 F.4th at 791 (citation modified) (quoting *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 491 (9th Cir. 2019)). Plaintiff's allegations are insufficient to meet these requirements.

Plaintiff effectively concedes that his allegations lack any detail about what specific information he claims was collected. Instead, Plaintiff insists that "what other actions Nguyen took on the Website are irrelevant to either his CIPA § 638.51 claim or his standing," but this argument cannot be reconciled with this Court's holding in *MyFitnessPal* that "[t]he sensitivity of the information at issue is also relevant in determining whether the plaintiff has adequately pleaded Article III injury." *MyFitnessPal*, 2026 WL 216334, at *3; *see also Popa*, 153 F.4th at 791; *Wooten v. BioLife Plasma Services L.P.*, 807 F. Supp. 1139, 1145 (E.D. Cal. 2025) ("the invasive nature of the information collected [is] crucial").

In *MyFitnessPal*, the information allegedly collected included personal topics like nutrition and fitness tracking-information that, at the motion to dismiss stage, "could plausibly" be "embarrassing, invasive, or otherwise private information." *MyFitnessPal*, 2026 WL 216334, at *3. Similarly, in *Semien v. PubMatic Inc.*, the plaintiffs alleged that the user profiles collected by PubMatic "include[d] a wide range of information, including information about credit scores, genres of television viewed, makes and models of vehicles owned, types of preferred food, specific products purchased at the supermarket, and language spoken in the home." 2026 WL 216333, at *4 (N.D. Cal. Jan. 27, 2026). Numerous other cases finding standing involve similarly detailed allegations of the sensitive or personal information allegedly collected. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) (alleging the disclosure of users' "employment history and political and religious affiliations" and data that would "reveal an individual's likes, dislikes, interests, and habits over a significant amount of time"); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) (alleging that plaintiff selected "Reject All non-essential cookies," but the website still tracked his "demographic information, interests and preferences, shopping behaviors" and "geolocation data"); *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 569 (N.D. Cal. 2025) (alleging the transmission of "highly personal information about menstruation, ovulation, pregnancy goals, and the like to Google and Meta . . . despite assurances to the contrary by Flo"); *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *1 (N.D. Cal. Mar. 28, 2025) (alleging that the transmission of "user's specific medical or mental health symptoms," "the type of care or treatment that the user is requesting," "information

concerning the user's gender, ethnicity, and faith preferences," "the user's health insurance provider," and "information regarding the mental health providers viewed and/or contacted"); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1037 (S.D. Cal. 2023) (alleging the collection of plaintiff's personal data, including his "communications related to his personal characteristics, mode of living, purchase decisions, personal choices, app selections, spending habits, and click choices"); *cf. Price v. Converse, Inc.*, 805 F. Supp. 3d 1102, 1105 (C.D. Cal. 2025) (Plaintiff failed to establish standing even though plaintiff alleged that the "TikTok Software gathers data including device and browser information, geographic information, and referral tracking," and that "Defendant used this information to fingerprint the data and deanonymize Plaintiff by matching it 'with existing data TikTok has acquired and accumulated about hundreds of millions of Americans.").

In stark contrast, Plaintiff alleges *no* specific action he took on the Website and fails to identify a single specific piece of private information that was purportedly disclosed. *See DellaSala v. Sama TV, Inc.*, 2025 WL 3034069, at *4-5 (N. D. Cal. Oct. 30, 2025) (dismissing intrusion upon seclusion claim because plaintiff's allegations as to what Samba actually collects were unclear). Strikingly, Plaintiff admits that he does not plead the dates he visited the Website, which pages he viewed, or whether he clicked anything at all. Opp. at 6-7. Absent any such allegations, there is no plausible basis to infer the collection of "embarrassing, invasive, or otherwise private information."

Plaintiff also fails to plead a "highly offensive" intrusion. In *Semien*, the plaintiffs alleged PubMatic intercepted sensitive information, such as health status and treatment, travel plans, political affiliation, and sexual orientation, but here, Plaintiff makes no such allegations. He does not identify *any* sensitive information collected about him, nor does he allege what, if any sensitive information, the purported third party user profiles contain. Nothing about Plaintiff's alleged interactions with Macy's Website implicates information that could qualify as "highly offensive."

And contrary to Plaintiff's suggestion, courts can and do resolve whether an intrusion is "highly offensive" as a matter of law at the pleading stage. *See, e.g., Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1091 (N.D. Cal. 2022) (dismissing where data collection was not "sufficiently specific or personal [or] harmful, to be highly offensive"); *McCoy v. Alphabet, Inc.*, 2021 WL

405816, at *7-8 (N.D. Cal. Feb. 2, 2021).

At bottom, Plaintiff fails to allege that the technology on Macy's Website collected embarrassing, invasive, or otherwise private information, and therefore the alleged collection is not actionable to confer standing.

*2. Plaintiff's Loss of Control Theory Is Not Actionable.*

Plaintiff's Opposition sidesteps the critical inquiry: whether Plaintiff had a valid expectation of privacy in the information alleged to be at issue. To allege a violation of California's constitutional right to privacy, a plaintiff must allege "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012). Instead, Plaintiff reframes his alleged harm as based on the linking of Website visitor information to "non-anonymous profiles," losing his ability to control his personal information. Opp. at 3, 6. Plaintiff asserts that this supposed loss of control of his information is an injury "encompassed by both common law and literal understanding of privacy." Opp. at 3 (citing *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989)).[1] But this new framing has no historical analogue to any of the "four discrete torts that protected specific kinds of privacy-related harms." *Popa*, 153 F.4th at 792. The relevant injury requires a close relationship to one of the following four discrete torts: "intrusion upon seclusion, appropriation of another person's name or likeness, publicity given to another person's private life, and publicity that places one in a false light." *Id.* Plaintiff's "loss of control" theory fits none of them.

Attempting to salvage his theory, Plaintiff argues that "it does not matter whether [Nguyen] had a reasonable expectation of privacy in the information collected because the privacy violation extends beyond the collection of just his IP address and metadata." Opp. At 6. According to Plaintiff, it is irrelevant "whether Nguyen provided information like his name and address" on Macy's website because the information allegedly collected ("his IP address, Device Metadata, and unique identifiers") was used to match his information to comprehensive, non-anonymous profiles. Opp. at 6-7. Plaintiff's attempt to draw a meaningful distinction between anonymized and non-anonymized

---

[1] Notably, the Supreme Court case cited by Plaintiff did not involve Article III standing.

data is unpersuasive.

Plaintiff further contends this case is unlike other cases where similar claims were dismissed because Plaintiff incorrectly claims that in those cases the "plaintiff did not allege[] a privacy invasion based on the creation of a detailed profile and his reduced capacity to remain anonymous." Opp. at 9 (internal citation omitted). But that characterization is flatly incorrect. Both *Khamooshi* and *Wooten* involved similar allegations, including profiling, monetization of user data, and ID bridging which links the data points to a specific user. *See Khamooshi v. Politico, LLC*, 2025 WL 2822879, at *4 (rejecting standing theory that defendant profited from the plaintiffs' data) (*Khamooshi II)*; *see also* First Am. Consol. Compl. at ¶ 89, *Khamooshi v. Politico, LLC*, No. 3:24-cv-07836-SK (N.D. Cal. June 3, 2025), Dkt. No. 49 (alleging defendant "shared and sold those users' profiles through the real-time bidding process and cookie syncing"); *Wooten*, 807 F. Supp. At 1145 (noting that plaintiff alleges that third party trackers have the capability to engage in ID bridging, but not that defendant took any action); *see also* First Am. Compl. at ¶ 72, *Wooten v. BioLife Plasma Services LP*, No. 1:25-cv-00099-KES-SKO (E.D. Cal. May 9, 2025), Dkt. No. 17 ("ID Bridging" is the process of "piecing together different bits of information about" a user "to confidently infer that it is the same individual accessing a publisher's site or sites from various devices or browsers."). Plaintiff's claim here fails for the same reasons those claims did.

Even setting that aside, Plaintiff cannot establish a close analogue to any of the four historical torts. And even if he could—he cannot—the cases he cites involved far more invasive conduct than anything alleged here. Further, several of Plaintiff's own authorities involved affirmative misrepresentations by defendants concerning plaintiffs' ability to reject cookies or prevent tracking. For example, in *Gabrielli v. Motorola Mobility LLC*, plaintiff alleged cookies were placed on users' browsers despite clicking the "Reject All" option. 2025 WL 1939957, at *1, 6. Plaintiff alleges nothing remotely comparable here. Ultimately, Plaintiff's "loss of control" theory is insufficient to establish Article III standing. Because Plaintiff's Opposition fails to identify any information that if collected could plausibly implicate a privacy interest, Plaintiff fails to establish Article III standing, and his claim should be dismissed.

***D. Plaintiff's Unjust Enrichment Theory Does Not Create Article III Standing.***

Plaintiff cannot satisfy the requirements of Article III standing based on a theory of unjust enrichment. Opp. at 5. Notably, unjust enrichment is not a cause of action in the FAC. Plaintiff asserts only a single cause of action, under CIPA § 638.51. Disgorgement, restitution, or any other relief for unjust enrichment is not available as damages under CIPA § 637.2(a). See Cal. Penal Code § 637.2(a) (providing for statutory or treble damages, but not equitable relief). Nonetheless, Plaintiff's theory of unjust enrichment does not relate to harm to *him*. Plaintiff alleges that Macy's was unjustly enriched from the alleged data collection but fails to explain how this resulted in a loss to him. *See Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025) ("Plaintiffs also cannot make an argument that the profit Defendant made as a result of disclosing Plaintiffs' data is sufficient to demonstrate a loss."). At bottom, Plaintiff has not made a showing of an alleged injury sufficiently analogous to unjust enrichment. Even if Plaintiff had (he hasn't) sufficiently shown his injury was similar to unjust enrichment, Plaintiff's standing would be limited to seeking restitution rather than damages. *See TransUnion LLC*, 594 U.S. at 436 ("[A] plaintiff must 'demonstrate standing separately for each form of relief sought.'").

Plaintiff's cited authorities also fail to support a theory of unjust enrichment. First, *Drummer v. Costar Group, Inc.*, is irrelevant because it does not address unjust enrichment and Plaintiff's cite merely reiterates an allegation from the complaint without any additional analysis from the court. 2025 WL 3190656, at *3 (C.D. Cal. Oct. 22, 2025). Second, *Greenley* was a case against a data broker, not a mere website provider like Macy's. In *Greenley*, defendant collected, packaged, and sold data to clients for advertising purposes. Indeed, defendant admitted that it "intercepts and reads massive amounts of consumer data using its technology in order to identify unique consumers and report on their travel and habits for marketing, verification, and other purposes." *Greenley*, 684 F. Supp. 3d at 1038. Macy's does not intercept *any* data. Ultimately, Plaintiff's cited authorities do not support his theory of unjust enrichment as a plausible basis for standing in this case. Plaintiff fails to establish Article III standing under any of his theories of harm, and his claim should be dismissed.

## II. PLAINTIFF FAILS TO ALLEGE A CIPA 638.51 VIOLATION.

### *A. The Microsoft And Taboola Technologies Are Not Pen Registers.*

Even assuming Plaintiff could establish Article III standing—he cannot—his claim under

§ 638.51 still fails. A pen register is a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). There is no binding authority that supports the application of § 638.51 to the Microsoft and Taboola technologies alleged to be at issue here. To the contrary, as discussed in Macy's Motion, the number of state court decisions rejecting the theory that § 638.51 is applicable to the technologies continues to grow. *See* Mot. at 11-15; *Blalock v. EquipmentShare.com Inc.*, 2026 WL 330067 (Cal. Super. Jan. 27, 2026) (sustaining demurrer because "purpose of the statute is to prevent the use of pen registers and trap and trace devices on telephones"; distinguishing *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. 2024); *Cammorata v. Sonifi Solutions, Inc.*, 2026 WL 500856 (Cal. Super. Feb. 18, 2026) (sustaining demurrer because alleged trap and trace device identified the source of electronic communication, meaning "simply the type of technology Plaintiff used to access Defendant's website," and revealed no personally identifying information).

The *Aviles* court addressed this precise issue, holding that the trackers allegedly not unlike what is alleged in this case were not pen registers because they did not collect any "dialing, routing, addressing, or signaling information incoming from Plaintiff's device." *Aviles v. Liveramp, Inc.*, 2025 WL 487196, at *3 (Cal. Super. Jan. 28, 2025) ("[w]ithout alleging that Defendant installed software on Plaintiff's device or browser that collected incoming contact information to Plaintiff's device, Plaintiff has not alleged anything above and beyond how the internet normally works."). Here, Plaintiff's pen-register theory fails for the same reason: he does not allege that the Website technologies captured any outgoing dialing, routing, addressing, or signaling information. California state courts continue to reject Plaintiff's assertion that these technologies qualify as pen registers, even distinguishing federal decisions. This growing body of conflicting rulings underscores ambiguity in the statutory language and creates an untenable landscape for companies attempting to align their online business activities with the law. *See Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025).

Further persuasive guidance on this point is imminent. Another case litigated by Bursor & Fisher is set to be heard by the California Courts of Appeal, Second Appellate District, to address

the precise issue here. As here, the defendant in the *Variety* appeal argues that "Section 638.51 was never intended to regulate online tracking technologies . . . [particularly] in the context of routine, automated software deployed on commercial websites that allows operators of those sites to collect nonpersonal information about the visitors to those websites." *See Variety Media, LLC v. Super. Ct. of Los Angeles Cty.*, No. B350578 (Cal. Ct. App. Jan. 8, 2026 order to show cause). The California Court of Appeal, Second Appellate District, recently issued an order to show cause for "why the relief sought in the petition should not be granted." *Id.* Notably, Plaintiff's counsel has conceded in the *Mashable* stipulation to stay, that the issues raised in the *Variety* appeal are dispositive as to whether Plaintiff can bring a claim such as the one brought in this case in stipulating to stays in several parallel cases raising identical pen register claims, pending the *Variety* decision. *See, e.g.*, Order Granting Stip. to Stay, Dkt. 82, *Fregosa v. Mashable, Inc.*, No. 25-cv-1094-CRB (Feb. 19, 2026); Order Granting Stip. to Stay, Dkt. 47, *Deivaprakash v. Conde Nast Digital*, No. 3:25-cv-04021-RFL (Feb. 25, 2026). Because the technology at issue does not collect the type of information required under CIPA § 638.50(b), the § 638.51 claim here necessarily fails.

### ***B. Plaintiff Has No Expectation Of Privacy In The Data Allegedly Collected.***

Plaintiff cannot be said to have any expectation of privacy in the information allegedly collected because Plaintiff voluntarily visited Macy's Website and did *not* provide any personally identifiable information. Courts have held that there is no legally protected privacy interest in an IP address. *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("Internet users have no expectation of privacy in ... the IP addresses of the websites they visit ...."); *see also Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) ("Thus, the question presented is whether disclosure of IP addresses gives rise to a privacy injury. It does not."); *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *3-4 (S.D. Cal. Nov. 3, 2025) (collecting cases); *see* Mot. at 7 (collecting cases). And a person generally "has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Carpenter v. United States*, 585 U.S. 296, 308 (2018) (quoting *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979)). That remains true "even if the information is revealed on the assumption that it will be used only for a limited purpose ...." *United States v. Miller*, 425 U.S. 435, 443 (1976). When internet users visit a website, their devices

automatically send their IP addresses to the website's server as part of the communication process. *See Forrester*, 512 F.3d at 510. Therefore, "IP addresses are ... voluntarily turned over in order to direct the third party's servers." *Id.* Accordingly, no reasonable expectation of privacy attaches to IP addresses. *Id.* Furthermore, "IP addresses are information about an address associated with a device, not sensitive personal information." *Id*. Thus, "an IP address—is not sufficiently private or personal to be analogous to the type of harm recognized in traditional privacy torts." *Id.* at 1180; *Rodriguez v. Brushfire Recs.*, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025).

Plaintiff's attempt to draw a distinction between voluntarily providing his IP address to Macy's versus to the third party providers is a distinction without a difference. Once Plaintiff visited the Website, he had no legitimate expectation of privacy in his IP address, regardless of how Macy's used it. Because Plaintiff has not identified a cognizable privacy interest in this information at issue, he fails to state an actionable CIPA claim.

## III. PLAINTIFF DOES NOT HAVE STATUTORY STANDING.

Plaintiff fails to establish standing to sue under § 638.51. Macy's does not dispute that CIPA § 638.51 confers a private right of action nor does Macy's argue that § 637.2 is per se invalid or that it does not apply to § 638.51. Rather, Macy's argues that Plaintiff's claims fall outside the zone of interests protected by CIPA. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (citations omitted) ("[A] statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'"). The zone of interests limitation "applies to all statutorily created causes of action." *Id.* Whether a plaintiff falls within the zone of interest is a question of statutory interpretation separate from Article III and requires a court to consider whether a plaintiff falls within the class of plaintiffs whom the legislature has authorized to sue. *See id.* at 126–28. Here, Section 630 specifies that the California Legislature enacted CIPA "to protect the *right of privacy* of the people of [California]." Cal. Penal Code § 630 (emphasis added). Thus, a claim under § 638.51 is actionable only if the claimant has a cognizable privacy interest in the information intercepted. Plaintiff's arguments to the contrary are unavailing. As previously discussed, Plaintiff has not alleged a privacy interest in the information he alleges was collected. A mere barebones statutory allegation without a protected interest is insufficient to confer

statutory standing.

## IV. THE RULE OF LENITY IS APPLICABLE TO CIPA SECTION 638.51.

As Macy's has argued and Plaintiff does not dispute, CIPA § 638.51 is a criminal statute. Cal. Penal Code § 638.51(c). As such, its interpretation is subject to the rule of lenity. Plaintiff's arguments to the contrary are unpersuasive. Section 638.51 makes it unlawful to "install or use a pen register...without first obtaining a court order pursuant to Sections 638.52 and 638.53." Cal. Penal Code § 638.51. As Sections 638.52 and 638.53 make clear, law enforcement can use a trap and trace device, but they must first obtain a court order. But to obtain such an order, law enforcement must supply specific information tied to the particular telephone line they seek to monitor. Cal. Penal Code §§ 638.52(d)(1)-(3) (requiring that an order "authorizing or approving the installation and use of a pen register or a trap and trace device" shall specify, *inter alia*, the "identity, if known, of the person to whom is leased or in whose name is listed the telephone line to which the pen register or trap and trace device is to be attached" and the "number and, if known, physical location of the telephone line to which the pen register or trap and trace device is to be attached[.]"); Cal. Pen. Code, § 638.52(c) ("Information acquired solely pursuant to the authority for a pen register or a trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined from the telephone number.").

Plaintiff contends that Section 638.52 "merely lists requirements relating to a particular type of pen register." But construing CIPA § 638.51 to encompass IP addresses or other data captured through ubiquitous website advertising technology would yield absurd results. As written, the statute requires the identification of a "telephone line" before a court order may be issued. No company could obtain an order related to internet communications because the statutory prerequisites are tailored to the traditional telephone, not online activity. *At a minimum*, the parties have identified an ambiguity that requires the application of the rule of lenity. Under that rule, CIPA§ 638.51 cannot be interpreted to support a claim that could potentially hold Macy's liable.

## CONCLUSION

For the foregoing reasons, and those set out in Macy's Motion, the Court should grant

Defendant's Motion without leave to amend.

Dated: March 5, 2026

**SHOOK, HARDY & BACON L.L.P.**

By: /s/ *Tammy B. Webb*
Tammy B. Webb
Matthew G. Ball
Aubrey Kramer

**Attorneys for Defendant**
MACYS.COM, LLC